Strafford
No. 88-451

THE STATE OF NEW HAMPSHIRE

v.

CLAYTON R. ELLIOTT

May 23, 1990

*John P. Arnold*, attorney general (*Ellen F. McCauley*, attorney, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J. The Superior Court (*Nadeau*, J.) denied the defendant's motion to withdraw a guilty plea, which he claimed was involuntary and unintelligent because he had not been advised that the ensuing conviction for driving under the influence, RSA 265:82 (Supp. 1989), would render him immediately liable to be declared a motor vehicle habitual offender, RSA 259:39 (Supp. 1989). We affirm.

In May, 1981, the defendant, Clayton Elliott, was convicted of operating a motor vehicle while under the influence of intoxicating liquor, and in July of the same year was convicted of operating after suspension of his license, RSA 263:64 (Supp. 1989). When, in 1985, he was charged with operating under the influence, subsequent offense, he informed his lawyer of the first 1981 conviction, but not of the second. His lawyer advised him that driving under the influence was a predicate offense for motor vehicle habitual offender status, and that a third such conviction would render him liable accordingly. When the lawyer later learned of the second 1981 conviction, for operating after revocation, he called it to the defendant's attention, but failed to advise him that this conviction could also be used to declare him an habitual offender.

The defendant was convicted in a district court on the 1985 charge and appealed to the superior court for trial *de novo*. Prior to trial, he agreed with the prosecutor, with advice of counsel, to plead guilty to the reduced charge of driving under the influence, first offense. His counsel failed to advise him that this plea would constitute a third predicate conviction, sufficient to subject him to an habitual offender order, RSA 259:39 (Supp. 1989).

Following the defendant's plea and conviction, he was declared to be an habitual offender, was ordered not to drive, and was subsequently charged with operating a motor vehicle in violation of the order. He then moved to withdraw the guilty plea on which his third, 1985, conviction rested, as "not knowing or intelligent in that he was not fully aware of the consequences of said plea with regard to being declared an Habitual Offender." The motion was denied. The defendant concedes that even a favorable ruling on his motion could have no effect on the prosecution for violating the habitual offender order, *see State v. Grondin*, 132 N.H. 194, 201, 563 A.2d 435, 439 (1989) (charge of violating habitual offender order not subject to defense by collateral attack on order itself), but he maintains he is entitled to withdraw the 1985 plea for all other purposes. The State does not

generally dispute a defendant's eligibility to seek leave to withdraw a plea to a charge of a predicate offense, *see Grondin, supra* at 201, 563 A.2d at 439, but argues that the failure of defense counsel to advise of the plea's consequences under the habitual offender act, and the defendant's failure to understand them, do not render the plea subject to withdrawal as unintelligent or involuntary.

■ The defendant's reference to the standard of voluntary and intelligent guilty plea is an obvious allusion to *Boykin v. Alabama*, 395 U.S. 238 (1969), the most notable of the federal cases holding that the fourteenth amendment's guarantee of due process obligates the trial judge to ascertain on a record basis that the defendant appreciates the circumstances and consequences of such a plea, *id.* at 242, 245. Accordingly, we understand the defendant's present claim to be grounded on the fourteenth amendment, and we have no occasion to decide any issue under the State Constitution.

■ *Boykin*, of course, concentrated on the need for judicial inquiry into the defendant's understanding that a guilty plea waives the privilege against compelled self-incrimination and the rights of confrontation and trial by jury. Although the opinion did not purport to limit the relevant "consequences" that a defendant must understand to these three waivers, it is now understood that the consequences of which a trial court is bound to assure a defendant's appreciation before accepting a guilty plea are confined to those that are "direct," *see Brady v. United States*, 397 U.S. 742 (1970), to the exclusion of those that are merely "collateral," *State v. Fournier*, 118 N.H. 230, 385 A.2d 223 (1978); *Strader v. Garrison*, 611 F.2d 61, 63 (4th Cir. 1979); *accord Nunez Corvero v. United States*, 533 F.2d 723, 726 (1st Cir. 1976).

■ The possible significance of a guilty verdict for purposes of the habitual offender act is a classic example of a conviction's consequence that is collateral, *see State v. Fournier supra*, in the sense that the consequence requires application of a legal provision extraneous to the definition of the criminal offense and the provisions for sentencing those convicted under it. Thus we have consistently held that a sentencing court need not advise a defendant about the habitual offender law before accepting a guilty plea to a predicate offense under that law, *see State v. Harper*, 126 N.H. 815, 498 A.2d 310 (1985); *State v. Levey*, 122 N.H. 375, 445 A.2d 1089 (1982); *State v. Fournier supra; see also Strader v. Garrison supra*.

It is clear that we could not follow these cases limiting the scope of the court's mandatory enquiry and at the same time treat the failure of counsel to give complete advice as a matter to be raised by challenging the voluntariness or intelligence of a plea. For if defense counsel's failure to advise of collateral consequences could render a plea involuntary and unintelligent, it would follow that the judge before whom a plea was offered would be obliged to enquire whether counsel had given such advice; nothing less would discharge the court's own responsibility to make a clear record that the defendant's decision to plead was knowing and voluntary. And to require that enquiry would be tantamount to requiring the court to enquire into the substance of the advice itself, for the court could hardly assure itself that counsel had succeeded in effectively advising of collateral consequences without discussing those consequences with the defendant to ascertain that the defendant knew what the court was asking about. Any such requirement would, of course, be wholly at odds with the line of cases previously cited, limiting a sentencing judge's responsibility to assuring that the defendant understands the direct consequence of his guilty plea. We adhere, rather, to those cases in concluding that a defendant's knowledge of collateral consequences is not within the scope of the "intelligent and voluntary" state of mind that must affirmatively be demonstrated to the court before acceptance of a guilty plea. We consequently hold that defense counsel's failure to advise of collateral consequences, as under the habitual offender law, is no ground for withdrawing a plea as unintelligent and involuntary.

In so confining our holding to the issue raised below, we do not, of course, purport to rule on the broader claim expressed in the defendant's brief, that "in certain circumstances defense counsel's failure" to advise the defendant of collateral consequences "may render a plea constitutionally invalid." Since a defendant is as much entitled to the effective assistance of counsel when entering a plea as on standing trial, see *Downs-Morgan v. United States*, 765 F.2d 1534 (11th Cir. 1985); *Strader v. Garrison*, 611 F.2d at 64, we must recognize at least the possibility that deficiencies in advice about collateral consequences of a plea may pull a lawyer's representation below the level of "reasonable competence" by which effective assistance of counsel is constitutionally measured, see *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Faragi*, 127 N.H. 1, 4, 498 A.2d 723, 726 (1985). *Compare Downs-Morgan v. United States supra* and *Strader v. Garrison supra* (plea open to collateral attack when coun-

sel positively misinformed defendant of significant collateral conse-
quence of plea) *with State v. Harper*, 126 N.H. at 821, 498 A.2d at 315
(failure of counsel to advise of plea's collateral consequence constitu-
tionally irrelevant). (It is well to add that even on the assumption
that inadequate advice about collateral consequences would consti-
tute a want of reasonable competence under some circumstances, a
defendant would obtain no relief from the consequences of his plea
without demonstrating prejudice as well, *see Strickland, supra* at
694; *Faragi, supra* at 5, 498 A.2d at 726.) But that is an issue for
another day. Here, it is sufficient to say that a request to withdraw a
guilty plea on grounds of inadequate advice about the plea's collat-
eral consequences must be litigated as raising a claim of ineffective
assistance of counsel, not as a claim of judicial error in accepting an
unknowing and involuntary plea.

*Affirmed.*

All concurred.