Cheshire
No. 94-387

MICHAEL DIAMONTOPOULAS

v.

THE STATE OF NEW HAMPSHIRE

August 25, 1995

*James E. Duggan,* chief appellate defender, of Concord, by brief for the petitioner.

*Jeffrey R. Howard,* attorney general (*Jeffrey S. Cahill,* assistant attorney general, on the brief), for the State.

BROCK, C.J. The petitioner, Michael Diamontopoulas, appeals the Superior Court (*Brennan,* J.) denial, without a hearing, of his *pro se* petition for a writ of habeas corpus, arguing that a guilty plea he entered in 1980 was not entered knowingly and voluntarily. We affirm.

In May 1980, the petitioner entered a guilty plea to one count of attempting to obtain a controlled drug by using a forged prescription. *See* RSA 318-B:20 (Supp. 1979) (now codified at RSA 318-B:2, XII-a (Supp. 1994)). Pursuant to a plea agreement with the State, the Superior Court (*Contas,* J.) sentenced the petitioner to six months, deferred, in the Cheshire County House of Corrections and to two years of probation. In March 1981, the petitioner was found chargeable for violating his probation because he failed to report to his probation officer and he failed to give notice when he changed his address. The Superior Court (*Contas,* J.) revoked the petitioner's probation and imposed the previously deferred sentence of six months; the court also placed the petitioner on probation for two years, commencing with his release from jail.

The petitioner never reported to his probation officer after his release from jail, and as a result, he was again charged with violation of the terms of his probation in December 1981. Although he was briefly incarcerated pending disposition of this second

probation violation, no proceedings on the matter were possible until 1992. In the intervening decade, the petitioner has been arrested several times, posted bail, and absconded before the probation violation charges could be heard. In 1992, the Superior Court (*Hollman*, J.) found the petitioner chargeable with probation violation, and the Court (*Brennan*, J.) sentenced him to serve three and one-half to seven years at the New Hampshire State Prison, which was the maximum term authorized by statute for the drug offense to which the petitioner pleaded guilty in 1980. *See* RSA 318-B:20 (Supp. 1979).

In 1994, the petitioner filed the instant petition for habeas corpus relief, asserting that his 1980 guilty plea was not knowingly or voluntarily entered. After the superior court denied the petition without a hearing, the petitioner appealed. He contends that he is entitled to a hearing on his petition because his plea was "based on an understanding that he would not serve more than six months" for his crime. Implicit in the petitioner's claim is the contention that *Boykin v. Alabama*, 395 U.S. 238 (1969), and *Richard v. MacAskill*, 129 N.H. 405, 529 A.2d 898 (1987), require that a criminal defendant be apprised of a guilty plea's collateral consequences, such as a sentence adjustment in response to a probation violation, before the guilty plea can be knowing and voluntary. We disagree.

In *Grote v. Powell*, 132 N.H. 96, 99, 562 A.2d 152, 154 (1989), we held that "when a petition for habeas corpus asserts that the petitioner was denied effective assistance of counsel, the court need not hold a hearing if the existing record of the case clearly indicates that the petitioner is not entitled to the relief requested on the grounds alleged." *Grote* recognized our long-standing rule that repeated habeas corpus petitions that introduce "no new facts material to the issue will ordinarily be summarily disposed of." *Id.* at 99, 562 A.2d at 153-54 (quotation omitted).

■ Although *Grote* on its face applies only to habeas corpus petitions alleging ineffective assistance of counsel, nothing in its analysis suggests a different rule in a guilty plea case. Indeed, the statute controlling habeas corpus proceedings envisions occasions where a hearing would not be required. RSA 534:5 (1974), for example, provides that if, from a review of the material accompanying a prisoner's writ, "it appears that the person is *lawfully* imprisoned or restrained of his liberty by virtue thereof, a writ of habeas corpus shall not be granted." (Emphasis added.) Further, RSA 534:19 (1974), entitled "Adjourning to Court," provides that the court to which a petition is presented "at any time before the prisoner is discharged, bailed or remanded, . . . *may* adjourn

further proceedings on the writ to the court, if then in session, or to the next term thereof if to begin within three months next afterward." (Emphasis added.) We find nothing in RSA chapter 534 that requires a hearing on a petition for writ of habeas corpus where the record presented clearly demonstrates that the petition is without merit. *See Grote*, 132 N.H. at 99, 562 A.2d at 154.

■ Based on the foregoing, we must examine the record to determine whether "the existing record of the case clearly indicates" that the petitioner entered his plea knowingly and voluntarily. *See id.* We cite federal cases only as an aid to our analysis, *see State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985), because the New Hampshire Constitution is at least as protective as the Federal Constitution in this area. On collateral review, we examine the guilty plea under *Boykin*, 395 U.S. 238, and *Richard*, 129 N.H. 405, 529 A.2d 898:

> If *Boykin* is satisfied by a record indicating that the trial court affirmatively enquired into the defendant's volition in entering the plea and into his appreciation of those consequences emphasized in the *Boykin* opinion, and if there is thus a basis on the face of the record for the original court's conclusion that the plea was voluntary and knowing, the criminal defendant will bear the burden to demonstrate by clear and convincing evidence that the trial court was wrong and that his plea was either involuntary or unknowing for the reason he specifically claims.

*Richard*, 129 N.H. at 408, 529 A.2d at 900.

The record clearly demonstrates that *Boykin* was satisfied in this case. The defendant completed and signed an "Acknowledgement of Rights" form before entering his plea. In addition, the sentencing judge engaged the defendant in a colloquy outlining his rights, pursuant to *Boykin*, prompting the following exchange:

Judge: Do you realize that one of these offenses is a Class A felony and that you can be imprisoned up to fifteen years in State prison? You realize that, sir?

Defendant: Yes, I have it right in front of me in black and white. I understand that fully.

Judge: Are all the statements that you have given today in this Acknowledgment of Rights truthfully and voluntarily given?

Defendant: Yes, Your Honor.

Compliance with *Boykin* does not end the matter. *See Richard*, 129 N.H. at 408, 529 A.2d at 900; *State v. LaRoche*, 117 N.H. 127, 131, 370 A.2d 631, 633 (1977). If the petitioner could adequately describe "the specific manner in which [his] plea was in fact involuntary or without understanding," *State v. Desbiens*, 117 N.H. 433, 437, 374 A.2d 651, 653 (1977), then he could be entitled to habeas relief. The petitioner must demonstrate this by clear and convincing evidence. *Richard*, 129 N.H. at 408, 529 A.2d at 900.

■ The record in this case makes clear that the petitioner would be unable to meet this burden, even with an evidentiary hearing. We have held that a defendant must be given the right to withdraw a guilty plea if a trial judge imposes a greater sentence than that recommended by the prosecution in negotiating for the plea. *State v. Goodrich*, 116 N.H. 477, 478-79, 363 A.2d 425, 426 (1976). In the instant case, the trial judge imposed exactly the sentence recommended by the State. *Goodrich*, accordingly, is of no help to the petitioner.

*Boykin* is satisfied if the defendant is informed of the direct consequences of a plea of guilty. *State v. Elliott*, 133 N.H. 190, 192, 574 A.2d 1378, 1380 (1990). In *Elliott*, we stated that "the consequences of which a trial court is bound to assure a defendant's appreciation before accepting a guilty plea are confined to those that are direct, to the exclusion of those that are merely collateral." *Id.* (citation and quotations omitted). For due process purposes, in *State v. White*, 131 N.H. 555, 558, 556 A.2d 308, 310 (1989), we stated that a defendant who was sentenced to a term of imprisonment and subsequent probation and who ultimately violated his probation was presumed to have known, at the time he entered his guilty plea, that if he violated probation his term of imprisonment might be enhanced. In the guilty plea context, this "is a classic example of a conviction's consequence that is collateral, in the sense that the consequence requires application of a legal provision extraneous to the definition of the criminal offense and the provisions for sentencing those convicted under it." *Elliott*, 133 N.H. at 192, 574 A.2d at 1380 (citation omitted).

■ Imprisonment after a probation violation requires not only the application of an independent provision of law, but also some misconduct on the part of the defendant. We conclude that the petitioner's plea was knowingly and voluntarily entered. It was unnecessary for the trial court to inform him of the possibility of imprisonment beyond the recommended sentence in the event of a probation violation, a possible collateral consequence of his plea.

Accordingly, it was not error for the trial court to deny his petition for habeas corpus relief without a hearing.

*Affirmed.*

All concurred.