Affirmed by published opinion. Judge AGEE wrote the majority opinion, in which Judge NIEMEYER joined. Chief Judge TRAXLER wrote a dissenting opinion.
OPINION
AGEE, Circuit Judge:
David Appleby (“Appleby”) appeals the judgment of the United States District Court for the Northern District of West Virginia, which dismissed his petition for a Writ of Habeas Corpus (hereinafter “habeas petition”) pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 2253(c), this Court granted a certificate of appealability on one issue. For the following reasons, we affirm the judgment of the district court.
I. Background
Appleby was indicted in September 2001 in the Circuit Court of Ohio County, West Virginia (“circuit court”) for Driving Under the Influence of Alcohol, Third Offense (“Count I”), in violation of West Virginia Code §§ 17C-5-2(d)(1)(A) and 17C-5-2(k), and Driving While Revoked for Driving Under the Influence, Third Offense (“Count II”), in violation of West Virginia Code § 17B-4-3(b).
Appleby entered a plea of guilty to both charges. During the plea colloquy, the circuit court informed Appleby that, as a consequence of his guilty plea, he could be imprisoned for “a term of not less than one year nor more than three years” each for Count I and for Count II. The court ad *534 vised Appleby that the one to three year sentences for each count could “run consecutively so that your sentence then would be not less then [sic] two nor more than six years.” J.A. 285-86. The court then accepted Appleby’s guilty plea as being entered “knowingly, intelligently and voluntarily,” J.A. 291, and set sentencing to take place approximately a week later.
The Ohio County prosecuting attorney then filed a Recidivist Information, which alleged that Appleby was “the same person who has been five times previously convicted in the State of West Virginia for crimes punishable by confinement in a penitentiary, [and] should be sentenced to be confined in the state correctional facility for life” pursuant to the West Virginia recidivist statutes, West Virginia Code §§ 61-11-18 and 61-11-19 (the “West Virginia recidivist statutes”).[1] J.A. 192. The predicate offenses alleged in the Recidivist Information included a felony conviction of unlawful assault, in violation of West Virginia Code § 61-2-9(a); two felony convictions of Driving While Revoked for Driving Under the Influence, Third Offense, in violation of West Virginia Code § 17B-4-3(b); and two felony convictions of Driving Under the Influence, Third Offense, in violation of West Virginia Code § 17C-5-2(k).
Before proceedings on the Recidivist Information began, Appleby filed numerous motions with the circuit court, including a motion to dismiss contending that the “offenses alleged in the information do not form a basis for the State’s request for a sentence of life.” J.A. 300. This motion was denied, but after obtaining new counsel, Appleby filed a second motion to dismiss, alleging multiple constitutional issues. The circuit court held a hearing on the second motion to dismiss which it also denied.
Appleby then petitioned the Supreme Court of Appeals of West Virginia (“WVSCA”) for a Writ of Prohibition to prevent the recidivist proceedings from continuing or, in the alternative, to allow him to withdraw his guilty plea. Appleby raised multiple constitutional and procedural issues in the petition, including: “[S]hould Mr. Appleby have been given notice of the State’s intention to have him sentenced as a recidivist before his plea was accepted?” J.A. 386. The WVSCA heard the petition on the merits, and ultimately denied relief on all issues. The WVSCA held, in relevant part, that because “the imposition of a life sentence is not ‘definite, immediate and largely automatic,’ ” the recidivist proceedings are a collateral consequence of a guilty plea and thus the “sentencing court need not advise a defendant about the habitual offender law before accepting a guilty plea to a predicate offense under that law.” Appleby v. Recht, 213 W.Va. 503, 583 S.E.2d 800, 808-09 (2002) (quoting Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1365-66 (4th Cir.1973), and State v. Elliott, 133 N.H. 190, 574 A.2d 1378, 1380 (1990)).
Proceedings on the Recidivist Information were then conducted in the circuit court. A jury verdict was returned finding Appleby to be the same person who committed the predicate crimes alleged. A sentencing hearing was held and a life sentence, with eligibility of parole after 15 years, was imposed in October 2003. Appleby appealed the decision to the *535 WVSCA, but the petition for appeal was denied.[2]
Appleby then timely filed the habeas petition with the district court, contending that his guilty plea was “not voluntary because he did not have a full understanding of the consequences of his guilty plea, in particular, Petitioner was not told at his plea hearing that he faced the possibility of a life sentence under the West Virginia recidivist statute.” J.A. 942. The Warden filed a motion to dismiss, which the magistrate judge recommended be granted principally because the WVSCA had found that a recidivist life sentence is a “collateral consequence of a plea, rather than a direct consequence” citing the decision in Recht. J.A. 948.
The district court adopted the magistrate judge’s Report and Recommendation, and found, in relevant part, that “petitioner’s plea was done knowingly and voluntarily” because “a valid guilty plea requires only that the defendant be advised as to the ‘direct’ consequences of his plea,” and “a recidivist life sentence is a ‘collateral’ consequence of a plea.” J.A. 966. The district court held the WVSCA “determination was not contrary to, or an unreasonable application of, clearly established federal law” and granted a motion to dismiss Appleby’s habeas petition with prejudice. J.A. 966-67.
Appleby timely appealed the district court’s order denying his habeas petition. This Court granted a certificate of appeal-ability as to this issue: “Whether Apple-by’s guilty plea was knowing and voluntary, in light of the question whether his sentence of life imprisonment was a direct or collateral consequence of his guilty plea.” J.A. 973. Our review is there-fore limited only to the foregoing issue.[3]
II. Standard of Review
The decision of a district court on a matter of habeas corpus relief is reviewed de novo and under the standards set forth in 28 U.S.C. § 2254. Bell v. Ozmint, 332 F.3d 229, 233 (4th Cir.2003). Under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), if the issue on appeal was adjudicated in state court, as it was here, this Court
may award habeas corpus relief on a claim that was adjudicated on its merits in state court only if the adjudication “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States” or “resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.”
Cummings v. Polk, 475 F.3d 230, 237 (4th Cir.2007) (quoting 28 U.S.C. § 2254(d)).
In Bell v. Cone, the Supreme Court held that a state court’s decision is “contrary to” clearly established federal law “if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.” 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). A state court’s decision is an “unreasonable application” of federal law “if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the partic *536 ular case.” Id. However, “it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.” Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).
III. Collateral Consequence
A.
Appleby argues that his due process rights were violated because the circuit court failed “to make certain that [he] had a full understanding of the consequences of his guilty plea.” Appellant’s Br. 12. Specifically, Appleby contends that he “was never told that by pleading guilty that he might be subject to a sentence in excess of the indeterminate consecutive sentence of two to six years imprisonment.” Appellant’s Br. 13. In sum, Appleby claims that “[t]he decision of the [WVSCA] that Mr. Appleby had no right to have the likelihood he would have to face a life sentence as a recidivist explained to him as part of a plea of guilty is not reasonable.” Appellant’s Br. 21.
The WVSCA held that the West Virginia analogue to Federal Rule of Criminal Procedure 11 “does not require a trial court to advise a defendant concerning a possible recidivist enhancement.”[4] Recht, 583 S.E.2d at 808. The WVSCA found “further support in the recognition of the Fourth Circuit that ... ‘the defendant need not be advised of all collateral consequences of his plea,’ ” which are those that do not result in “a definite, immediate and largely automatic effect on the range of the defendant’s punishment.” Id. (quoting Cuthrell, 475 F.2d at 1365-66). Because “[t]he State not only retains the discretion to decide when to pursue recidivist sentencing (or to decide not to so proceed), but the separate nature of the recidivist proceeding^] [also] requires the State to satisfy a number of requirements,” the WVSCA held that a recidivist proceeding is a collateral, and not direct, consequence of a guilty plea. Id. The WVSCA concluded that Appleby thus had full understanding of the direct consequences of his plea, and therefore his due process rights were not violated. The issue before us is whether the WVSCA’s determination is contrary to or an unreasonable application of applicable federal law, as determined by the United States Supreme Court.
B.
In Recht, the WVSCA stated that
*537 “[g]uilty pleas are governed by Rule 11 of the West Virginia Rules of Criminal Procedure, which is patterned after Rule 11 of the Federal Rules of Criminal Procedure.” State v. Bennett, 179 W.Va. 464, 370 S.E.2d 120, 123 (1988). In applying our Rule 11, we have looked to the advisory committee’s note to federal Rule 11.
Recht, 583 S.E.2d at 807-08. The 1966 Amendments to the Rule set out the requirement that, before accepting a guilty plea, a judge must “determine that the defendant understands” the consequences and provides a list of these consequences which includes, among other things, “any maximum possible penalty” and “any mandatory minimum penalty.” FRCP 11(b)(1)(H) & (b)(1)(I). The notes to the 1974 amendments of the Rule explain that
the judge is not required to inform a defendant about [additional consequences that might follow a guilty plea, including additional punishment], though a judge is free to do so if he feels a consequence of a plea of guilty in a particular case is likely to be of real significance to the defendant.
Id. (emphasis added).
These amendments brought the Rule in line with the preexisting and longstanding principle that, before accepting a guilty plea, a trial judge must ensure that the defendant is fully aware of the relevant consequences of the plea. See, e.g., Kercheval v. United States, 274 U.S. 220, 223-24, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). However, exactly which consequences are relevant beyond the list articulated by the Rule remained undefined. Thus, it was “clear that administration of [Rule 11] require[d] the development of some limiting guide to define the nature of the consequences of which a defendant must be advised so that the requirements of the rule shall have been met.” Fruchtman v. Kenton, 531 F.2d 946, 948 (9th Cir.1976).
The Supreme Court has emphasized that, because a defendant who enters a guilty plea forgoes “not only a fair trial, but also other accompanying constitutional guarantees^] ... the Constitution insists, among other things, that the defendant enter a guilty plea that is ‘voluntary’ and that the defendant must make related waivers ‘knowing[ly], intelligently], [and] with sufficient awareness of the relevant circumstances and likely consequences.’” United States v. Ruiz, 536 U.S. 622, 628-29, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (quoting Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). A defendant enters a guilty plea intelligently when he is “advised by competent counsel, ... made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties.” Brady, 397 U.S. at 756, 90 S.Ct. 1463. A guilty plea is voluntary if “ ‘entered by one fully aware of the direct consequences’ ” of the plea. Id. at 755, 90 S.Ct. 1463 (emphasis added) (quoting Shelton v. United States, 246 F.2d 571, 572 n. 2 (5th Cir.1957) (en banc), rev’d on confession of error on other grounds, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)).
The Supreme Court has neither further defined the term “direct,” nor has it addressed whether recidivist proceedings are a “direct” consequence of the plea within the meaning of Brady.[5] Therefore, we *538 must decide whether the WVSCA’s determination that the West Virginia recidivist proceedings are not a direct consequence of the plea is contrary to or an unreasonable application of Brady. An examination of the nature of the West Virginia recidivist statutes and proceedings, Supreme Court commentary on recidivist statutes generally, and the federal circuit court of appeals’ interpretation of Brady lead us to the conclusion that it was not.
1.
In Recht, the WVSCA examined recidivist proceedings brought pursuant to the West Virginia recidivist statutes, and concluded those proceedings are of a “separate nature,” and thus a collateral consequence of the plea.[6] After citing our decision in Cuthrell that “the distinction between ‘direct’ and ‘collateral’ consequences of a plea ... turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant’s punishment,” the Recht Court addressed the state law basis of Appleby’s claim.
Under West Virginia Code §§ 61-11-18 & 19, the imposition of a life sentence is not “definite, immediate and largely automatic.” The State not only retains the discretion to decide when to pursue recidivist sentencing (or to decide not to so proceed), but the separate nature of the recidivist proceeding requires the State to satisfy a number of requirements, such as: (1) filing a written information; (2) proving “beyond a reasonable doubt that each penitentiary offense, including the principal penitentiary offense, was committed subsequent to each preceding conviction and sentence”; and (3) proving beyond a reasonable doubt to the jury the identity of the defendant.
Recht, 583 S.E.2d at 808 (internal citations omitted).
Moreover, West Virginia Code § 61—11—19 requires the Recidivist Information be brought before the defendant is sentenced and within the same term of court “at which such person was convicted” or jurisdiction to impose the recidivist sentence is lost. To the extent the issue before us involves questions of West Virginia law, the determination of the WVSCA is binding as to matters of interpretation of state law. Estelle, 502 U.S. at 67-68, 112 S.Ct. 475.
We agree with the WVSCA’s determination that recidivist proceedings are of a “separate nature” for several reasons. First, even if a defendant has committed the requisite predicate crimes, it is not a certainty that the recidivist information will be filed. The decision to file the recidivist information is soundly left to the prosecuting attorney’s discretion. W. Va. Code § 61-11-19; see also Rummel v. Estelle, 445 U.S. 263, 281, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (“It is a matter of common knowledge that prosecutors often exercise their discretion in invoking recidivist statutes.... ”). Because the recidivist information is filed after the court accepts the defendant’s guilty plea, and because the prosecuting attorney has the discretion to decide whether to file it, the trial court cannot necessarily be expected to have knowledge of the possibility. See United States v. Cariola, 323 F.2d 180, 186 (3d Cir.1963) (“[U]nsolicited advice concerning *539 the collateral consequences of a plea which necessitates judicial clairvoyance of a superhuman kind can be neither expected nor required.”).
Second, if the prosecuting attorney decides to file the recidivist information, it must be timely and a separate proceeding must be held and several additional elements must be proven. The fact that each predicate offense was actually committed and that the defendant is the person who committed these crimes must be proven beyond a reasonable doubt. W. Va.Code § 61-11-19. If a jury is impaneled for the recidivist proceedings, that jury is completely distinct from that of the original proceeding. See George v. Black, 732 F.2d 108, 110-11 (8th Cir.1984) (holding that a mandatory mental health commitment proceeding is not a direct consequence of the plea because the “proceedings are completely distinct from the original criminal proceedings and are conducted by a different tribunal”). Thus, the nature of recidivist proceedings pursuant to the West Virginia recidivist statutes verifies that those proceedings are not a “direct” consequence of the plea because they are not “definite, immediate and largely automatic.”[7]
2.
The view that West Virginia recidivist proceedings are of a separate, indirect nature is bolstered by the Supreme Court’s holdings and comments in decisions dealing with recidivist statutes. The Court has, in multiple cases, noted the “distinct nature” of recidivism proceedings. In Graham v. West Virginia, the Supreme Court noted the “distinct nature of the issue [of recidivism]” and the fact that “it does not relate to the commission of the offense ... and therefore it may be subsequently decided.” 224 U.S. 616, 629, 32 S.Ct. 583, 56 L.Ed. 917 (1912); see also Almendarez-Torres v. United States, 523 U.S. 224, 244, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). The Court has consistently held that recidivism is not an element of the triggering crime, thus further emphasizing the discrete nature of the two proceedings. E.g., Almendarez-Torres, 523 U.S. at 244, 118 S.Ct. 1219 (“[T]o hold that the Constitution requires that recidivism be deemed an ‘element’ of petitioner’s offense would mark an abrupt departure from a longstanding tradition.... ”).
In Oyler v. Boles, a decision also dealing with a challenge to the West Virginia recidivist statutes, the Supreme Court held that a defendant need not receive notice of impending recidivist proceedings during the trial on the underlying triggering offense. Although it does not deal with precisely the same issue at bar, Oyler is instructive. The Court held that “the determination of whether one is an habitual criminal is ‘essentially independent’ of the determination of guilt on the underlying substantive offense.” Oyler, 368 U.S. 448, 452, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Although a defendant must receive “reasonable notice” of impending recidivism proceedings, the Oyler Court emphasized that “due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding.” Id.; see also Almendarez-Torres, 523 U.S. at 243, 118 S.Ct. 1219. It is clear from the Oyler decision and others that the Supreme Court has repeatedly emphasized the separate nature of recidivist proceedings, *540 lending support to the WVSCA’s determination that the proceedings are not a direct consequence of a guilty plea within the meaning of Brady.
The Recht Court appropriately referenced an opinion of retired Justice Souter when sitting as a New Hampshire Supreme Court justice:
The possible significance of a guilty verdict for purposes of the habitual offender act is a classic example of a conviction’s consequences that is collateral in the sense that the consequence requires application of a legal provision extraneous to the definition of the criminal offense and the provisions for sentencing those convicted under it. Thus, we have consistently held that a sentencing court need not advise a defendant about the habitual offender law before accepting a guilty plea to a predicate offense under that law.
Recht, 583 S.E.2d at 808-09 (quoting Elliott, 574 A.2d at 1380).
3.
We find further support for the WVSCA’s decision in an examination of circuit courts of appeals’ almost universally identical interpretation of Brady. See Virsnieks v. Smith, 521 F.3d 707, 716 (7th Cir.2008) (“[T]o a very limited extent, reference to lower court holdings may be evidence of a rule mandated implicitly by the Supreme Court.”); Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir.2003). The Fourth Circuit and many of its sister circuits have defined the term “direct” used by the Brady Court by focusing on a dichotomy between “direct” and “collateral” consequences of a plea. See Cuthrell, 475 F.2d at 1366; see also Wilson v. McGinnis, 413 F.3d 196, 199 (2d Cir.2005); Steele v. Murphy, 365 F.3d 14, 17 (1st Cir.2004); United States v. Littlejohn, 224 F.3d 960, 965 (9th Cir.2000); King v. Dutton, 17 F.3d 151, 152 (6th Cir.1994); United States v. Salmon, 944 F.2d 1106, 1130 (3d Cir.1991); George v. Black, 732 F.2d 108, 110 (8th Cir.1984); United States v. Sambro, 454 F.2d 918, 922 (D.C.Cir.1971) (en banc) (‘We presume that the Supreme Court meant what it said when it used the word ‘direct’; by doing so, it excluded collateral consequences.”).
In defining the two terms, this Court in Cuthrell held that “[t]he distinction between ‘direct’ and ‘collateral’ consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant’s punishment.” Cuthrell, 475 F.2d at 1366; see also United States v. Bouthot, 878 F.2d 1506, 1511 (1st Cir.1989). The Ninth Circuit noted that “where the consequence is contingent upon action taken by an individual or individuals other than the sentencing court ... the consequence is generally ‘collateral.’ ” Littlejohn, 224 F.3d at 965. Courts have held that collateral consequences of a plea include deportation, United States v. Russell, 686 F.2d 35, 39 (D.C.Cir.1982); the potential loss of federal benefits, United States v. Morse, 36 F.3d 1070, 1072 (11th Cir.1994); the use of a conviction as an aggravating circumstance in sentence for an unrelated charge, King v. Dutton, 17 F.3d 151, 153 (6th Cir.1994); the possibility of consecutive sentences, Wall v. United States, 500 F.2d 38, 39 (10th Cir.1974) (per curiam); a subsequent mandatory mental health commitment proceeding, George, 732 F.2d at 110; and the possibility of commitment for life as a sexually dangerous person, Steele, 365 F.3d at 17. Furthermore, several circuit courts of appeals have explicitly held that possible subsequent classification of the defendant as a recidivist if he committed a future felony is a collateral, and thus not a direct, consequence of a plea. See, e.g., United States *541 v. Salerno, 66 F.3d 544, 551 (2d Cir.1995); Salmon, 944 F.2d at 1130. But see Berry v. United States, 412 F.2d 189, 191-92 (3d Cir.1969) (holding that the fact that the defendant was ineligible for parole because of his status as a recidivist was a consequence of which he must have been informed during the plea colloquy).
Although these circuit court decisions do not ultimately determine whether the WVSCA misapplied Supreme Court precedent, “these prior decisions can and indeed must guide us in determining what constitutes an unreasonable application, under § 2254(d), of the rule that a guilty plea must be knowing, intelligent and voluntary in order to be valid.” Wilson, 413 F.3d at 199-200.
IV.
For the foregoing reasons, we conclude that the WVSCA’s holding that recidivist proceedings were not a direct consequence of Appleby’s guilty plea, and thus his plea was knowing and voluntary, was not contrary to or an unreasonable application of established federal law as determined by the Supreme Court. Accordingly, the judgment of the district court is

AFFIRMED.

. West Virginia’s recidivist statute directs that when "any person [is] convicted of an offense punishable by confinement in the penitentiary," § 61-11-19, and that "person [has] been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life.” § 61-ll-18(c).

. Appleby did not file a state habeas petition.

. On brief, Appleby argues three additional issues. However, because "this court is empowered to consider only the ‘specific issue or issues' set forth in the certificate of appealability," we will not consider those issues. See United States v. Linder, 561 F.3d 339, 344 n. 6 (4th Cir.2009).

. Although both parties agree that the circuit court did not discuss the possibility of future recidivist proceedings with Appleby, the WVSCA
note[d] that the State says that it specifically informed Mr. Appleby’s trial counsel that, if he was convicted, the State would seek a recidivist sentence, and that discovery was apparently provided to Mr. Appleby that included a list of Mr. Appleby's prior convictions. We additionally note that at a bond hearing ... the Prosecuting Attorney told the trial judge, in the presence of Mr. Appleby and counsel, "I do not believe that two to six is the maximum sentence he may be facing. And in fact, this Court has often indicated that DUI three is an act of violence, and I contend that there's a possibility of a much steeper sentence
Recht, 583 S.E.2d at 809 n. 6. Appleby was at this hearing and presumably heard this exchange.
This Court has held that, even if neither the court nor defendant’s counsel "ascertained that [the defendant] understood the consequences of his plea,” if the defendant "in fact understood, the error was harmless,” although the state has the burden of proving harmlessness. Bailey v. Mac-Dougall, 392 F.2d 155, 160 (4th Cir.1968). The Second and Eighth Circuits have held that it is sufficient that the defendant actually know of the consequences of his plea, even if the court did not inform him. See United States ex rel. Brooks v. McMann, 408 F.2d 823, 825-26 (2d Cir.1969); Kotz v. United States, 353 F.2d 312, 314-15 (8th Cir.1965).

. Although the Supreme Court has not answered the question directly, "[fjor the 'clearly established’ prong to apply, the relevant Supreme Court precedent need not be directly on point, but must provide a ‘governing legal principle’ and articulate specific considerations for the lower courts to follow when applying the precedent.” Quinn v. Haynes, 234 F.3d 837, 844 (2000). The Court has done so in Brady.

. Although the WVSCA cited Rule 11 and circuit court of appeals precedent, it did not cite Brady. However, “to avoid [the] pitfall of rendering decision 'contrary to’ federal law, [the] state court need not cite or even be aware of relevant Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.’ ” Barbe v. McBride, 521 F.3d 443, 456 n. 19 (4th Cir.2008) (quoting Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002)).

. With due respect for the view expressed in the dissent, we note that the dissent does not, and cannot, rebut the significant distinction of the West Virginia recidivist proceedings as separate, independent, and discretionary proceedings from the underlying criminal conviction. Consequently, the recidivist proceedings are not, as a matter of law, a “definite, immediate, and largely automatic” consequence of the guilty plea.