NOT DESIGNATED FOR PUBLICATION

No. 113,561

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RENA JOHNSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; PHILLIP B. JOURNEY, judge. Opinion filed August 18, 2017. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., GREEN and HILL, JJ.

*Per Curiam*: After appearing pro se and pleading guilty to two traffic misdemeanors, Rena Johnson learned that she qualified as a habitual violator under K.S.A. 2013 Supp. 8-286 and was subject to a 3-year revocation of her driving privileges. She filed a postsentencing motion to withdraw her plea. The district court denied the motion, ruling that Johnson had not established manifest injustice. Johnson appeals and argues that her due process rights were violated because she had not been informed of the revocation of her driving privileges prior to accepting the plea. However, because the civil action revoking her driving privileges was only a collateral consequence of her plea, due process did not demand that the State fully inform Johnson prior to her plea.

1

On May 13, 2014, a Wichita State University police officer observed Johnson driving the wrong way on a one-way street and stopped her car. The State charged Johnson with Count I— driving the wrong way on a one-way street, contrary to K.S.A. 8-1521, a traffic infraction; Count II—driving while license is suspended or canceled, a Class B, nonperson misdemeanor, contrary to K.S.A. 2013 Supp. 8-262(a)(1); and Count III—no proof of insurance, a Class B misdemeanor, contrary to K.S.A. 2013 Supp. 40-3104(c).

Johnson appeared pro se on January 23, 2015. In exchange for the State's dismissal of Count I, she pled guilty to an amended Count II—no driver's license in possession, contrary to K.S.A. 8-244, and Count III—no proof of insurance. The district court sentenced Johnson to a $20 fine for Count II, and 10 days in jail plus a $300 fine for Count III. However, the jail time was suspended if Johnson paid the fines and costs within 180 days.

On the acknowledgement and waiver of rights form, Johnson certified that she (1) was aware of the charges, (2) had been notified of the possible penalties, (3) waived various trial rights, (4) was acting voluntarily, and (5) fully understood her plea. Johnson also signed a journal entry which, in part, noted that the habitual violator statute had been explained to her and was applicable to the judgment.

K.S.A. 2013 Supp. 8-286 allows the Kansas Department of Revenue (KDOR) to initiate a civil action against a driver who within the 5 years prior is convicted of at least three of the enumerated offenses, including driving under the influence, driving with a suspended/revoked license, and driving without insurance. The civil action promptly revokes the individual's driving privileges for 3 years.

This was Johnson's third conviction within 5 years, which exposed her to the consequences of the habitual violator statute. On February 12, 2015, Johnson asserted

2

through her attorney that the assistant district attorney had advised her that the guilty plea would not trigger the habitual violator action. In a motion to withdraw her plea, Johnson argued this provided grounds for her to withdraw the guilty plea, even though the district court had already sentenced her.

The district court held a hearing on Johnson's motion, during which neither side presented evidence. Johnson's attorney argued her plea had not been fairly and understandingly given. He argued that (1) Johnson was pro se when she pled, (2) it was unrealistic to expect a pro se defendant to appreciate the habitual violator statute, (3) the habitual violator statute was either not explained or Johnson was told that it would not apply, and (4) the 3-year driving suspension was too harsh, especially since Johnson transported her disabled father.

In response, the State noted that (1) it would be unusual for an assistant district attorney to inform an individual that habitual violator status would not apply, since that was an administrative action taken by the KDOR, and (2) the journal entry of judgment indicated the habitual violator statute had been explained and it would apply to Johnson's case.

The district court considered both sides' arguments and determined that Johnson had failed to establish manifest injustice based on the stated reasons.

Johnson filed an untimely notice of appeal. However, after she secured a remand from this court, the district court conducted a hearing and ruled that Johnson could pursue a late appeal of the denial of her motion to withdraw her plea pursuant to the holding in *State v. Hemphill*, 286 Kan. 583, 186 P.3d 777 (2008). The district court rejected Johnson's attempts to appeal her conviction and sentence pursuant to *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982).

3

We must determine whether the district court abused its discretion in denying Johnson's motion to withdraw her guilty plea after sentencing.

A district court may allow a defendant to withdraw a guilty plea after sentencing to correct manifest injustice. K.S.A. 2016 Supp. 22-3210(d)(2). On appeal, we assess whether the district court abused its discretion in granting or denying the motion. *State v. Davisson*, 303 Kan. 1062, 1064-65, 370 P.3d 423 (2016). A court abuses its discretion if its action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of fact; or (3) based on an error of law. 303 Kan. at 1065. To the extent that an error of law exists, our review is unlimited. *Unruh v. Purina Mills*, 289 Kan. 1185, 1191, 221 P.3d 1130 (2009). The party challenging the ruling on the motion bears the burden of proving that the district court abused its discretion. *Davisson*, 303 Kan. at 1065.

The manifest injustice standard requires that the defendant produce facts showing that it would be "obviously unfair or shocking to the conscience" to prohibit a defendant from withdrawing the plea. *State v. Oliver*, 39 Kan. App. 2d 1045, 1048, 186 P.3d 1220 (2008). In determining this, Kansas courts rely on at least three factors: (1) whether competent counsel represented the defendant; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the defendant fairly and understandingly accepted the plea. *State v. Bricker*, 292 Kan. 239, 244, 252 P.3d 118 (2011).

Johnson argues for the first time on appeal that her due process rights were violated. Specifically, she alleges she was not informed that the habitual violator statute would apply and that exposure to that statute is a direct penal consequence of her plea. Because due process requires a defendant be informed of direct penal consequences, Johnson contends her rights were violated, establishing manifest injustice. She argues the district court abused its discretion in ruling otherwise.

Contrary to Kansas Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34), Johnson has failed to explain why the due process issue is properly before us for the first time. If we strictly enforce that rule, then Johnson's due process claim is abandoned. *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015). However, even if we overlook her failure to comply, Johnson loses on the merits.

A violation of due process is sufficient to establish manifest injustice. See *State v. Schow*, 287 Kan. 529, 541, 197 P.3d 825 (2008). In the context of a guilty plea, due process requires that the direct penal consequences of the plea be communicated to the defendant. *State v. Moody*, 282 Kan. 181, 194-95, 144 P.3d 612 (2006). However, the defendant need not be informed of the collateral consequences arising from the plea. 282 Kan. at 194-95.

Direct penal consequences are those which are the "definite, immediate, and largely automatic result of the guilty plea." *City of Ottawa v. Lester*, 16 Kan. App. 2d 244, 248, 822 P.2d 72 (1991) (quoting *United States v. Lott*, 630 F. Supp. 611, 612 [E.D. Va.], *aff'd* 795 F.2d 82 [1986]). For example, a mandatory 1-year period of postrelease supervision is definite, immediately follows imprisonment, and is automatic. *Moody*, 282 Kan. at 195-96. Failing to inform a defendant of that mandatory supervision prior to a guilty plea would violate due process and, thus, establish manifest injustice. 282 Kan. at 195-96.

Collateral consequences, on the other hand, arise from a source external to the criminal offense or provisions for sentencing an individual convicted of that offense. *Lester*, 16 Kan. App. 2d at 247 (citing *New Hampshire v. Elliott*, 133 N.H. 190, 193, 574 A.2d 1378 [1990]). In *Lester*, for example, the court determined that the suspension of driving privileges following a DUI conviction was a collateral consequence. 16 Kan. App. 2d at 248. As justification, the court noted that (1) the driving suspension resulted from the KDOR's administrative action, and (2) the provision authorizing the suspension

5

was separate and distinct from the part of the statute authorizing fines or imprisonment. 16 Kan. App. 2d at 248.

Furthermore, the *Lester* court cited to several jurisdictions where exposure to a habitual offender statute is a collateral consequence that need not be explained to a defendant. *People v. McKnight,* 200 Colo. 486, 498, 617 P.2d 1178 (1980) (exposure to habitual traffic offender proceeding); *State v. Jackson,* 362 So. 2d 1082, 1088 (La. 1978) (exposure to habitual offender charge); *State v. Elliott,* 133 N.H. 190, 193, 574 A.2d 1378 (1990) (exposure to habitual traffic offender proceeding); *State v. Barton,* 93 Wash. 2d 301, 305, 609 P.2d 1353 (1980) (habitual criminal charge). However, no Kansas cases have specifically held that exposure to the habitual traffic violator statute is a collateral consequence.

Here, if Johnson was informed that she qualified for the habitual violator statute prior to accepting her plea, then her due process rights were not violated even if the revocation of driving privileges was a direct penal consequence. The State asserts it informed Johnson that the habitual violator statute would apply, and the record provides some support for that position. The journal entry of judgment, which Johnson signed, indicates the habitual violator statute was explained and was applicable to her case. Furthermore, the State asserts it is standard protocol to explain what falls under the statute and whether the case qualifies.

Even if the statute was not explained, however, the State did not violate Johnson's due process rights because exposure to the statute is only a collateral consequence of the plea. Here, as in *Lester*, the revocation of driving privileges stems from a civil action by a state administrative agency. The action is initiated by the KDOR, and it is civil, not criminal, in nature. *State v. Boos*, 232 Kan. 864, 867, 659 P.2d 224 (1983). Furthermore, as in *Lester*, the habitual violator statute, K.S.A. 2013 Supp. 8-286, is separate and distinct from the statutes providing criminal penalties for Johnson's conduct, K.S.A. 2013 Supp. 40-3104(c) and K.S.A. 8-244.

6

The *Lester* court ruled the suspension of driving privileges was a collateral consequence; therefore, the revocation of Johnson's privileges pursuant to the habitual violator statute was also a collateral consequence. Johnson's due process rights were not violated even if the habitual violator statute was not fully explained to her, since due process only requires a defendant be informed of direct penal consequences prior to a guilty plea. The district court did not abuse its discretion in finding that Johnson had failed to establish manifest injustice.

That being said, Johnson's contention that her suspension of driving privileges was a direct penal consequence of her guilty plea is not entirely without merit. The language of the habitual violator statute, after all, describes an action that is largely definite, immediate, and automatic: "Whenever the files and records of the division shall disclose that the record of convictions of any person is such that the person is an habitual violator . . . , the division *promptly shall revoke the person's driving privileges for a period of three years . . . .*" (Emphasis added.) K.S.A. 2013 Supp. 8-286. The period is definite ("three years"), the action is immediate ("promptly"), and the KDOR does not retain discretion ("shall revoke").

However, since the suspension of driving privileges is a civil action arising from a distinct and separate provision, exposure to the habitual violator statute is better classified as a collateral consequence, consistent with *Lester*. Due process does not require a defendant be informed of collateral consequences of a plea. The district court did not abuse its discretion in finding that Johnson had failed to establish manifest injustice.

Affirmed.