No. 54,879

STATE OF KANSAS, *Appellant,* v. JOHN N. BOOS, *Appellee.*

(659 P.2d 224)

Opinion filed February 19, 1983.

*Kenneth R. Smith,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Gene M. Olander,* district attorney, were with him on the brief for appellant.

*John C. Humpage,* of Humpage, Berger and Hoffman, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by the State from an order of the trial court dismissing an action seeking to have the defendant, John N. Boos, declared an habitual violator of the traffic laws as defined in K.S.A. 8-285.

The proceedings were initiated by the district attorney filing a "complaint" charging the defendant with being an habitual violator under K.S.A. 8-284 *et seq.* At the trial the State introduced certified records from the division of vehicles of the department of revenue which revealed three convictions of

driving while under the influence of intoxicating liquor or drugs within the previous five-year period. The defendant does not deny the three convictions and admits he is the person named in each of the cases. The records indicate a conviction in Shawnee County District Court on January 2, 1981; a conviction in Doniphan County District Court on December 11, 1977; and one in the Municipal Court of Atchison, Kansas, on March 18, 1977. This action was filed October 7, 1981. The statutes involved provide:

"8-284. **Public policy of state.** It is hereby declared to be the public policy of the state of Kansas:

(*a*) To provide maximum safety for all persons who travel or otherwise use the public highways of the state;

(*b*) To deny the privilege of operating motor vehicles on such highways to persons who by their conduct, attitude and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws of this state, the orders of its courts and the statutorily required acts of its administrative agencies; and

(*c*) To discourage repetition of criminal acts by individuals against the peace and dignity of this state and its political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual violators who have been convicted repeatedly of violations of traffic laws."

"8-285. **'Habitual violator,' what constitutes; other definitions.** Except as otherwise provided in this section, as used in this act, the words and phrases defined in K.S.A. 8-234a shall have the meanings ascribed to them therein. The term 'habitual violator' means any resident or nonresident person who, within the immediately preceding five years, has been convicted in this or any other state:

(*a*) Three or more times of:

. . . . .

(2) Driving while under the influence of alcohol or drugs, as prohibited by K.S.A. 8-1567 and amendments thereto, or as prohibited by an ordinance of any city in this state or by any law of another state, which ordinance or law declares to be unlawful the acts prohibited by that statute;"

"8-286. **Habitual violator; certification of records to the district or county attorney; prosecution of violator; order of court prohibiting operation of vehicle filed with division.** Whenever the files and records of the division shall disclose that the record of convictions of any person is such that the person is an habitual violator, as prescribed by K.S.A. 8-285 the division forthwith shall certify a full and complete abstract of such person's record of convictions to the district or county attorney of the county where such person resides, as disclosed by the records of the division, or if such person is a nonresident, to the district attorney of Shawnee county. Upon receiving said abstract, the district or county attorney forthwith shall commence prosecution of such person in the district court of such county, alleging such person to be an habitual violator. Such court shall cause a summons to be served on the accused, ordering the accused to appear before the court at a time and date stated therein to show cause why he or she should not be

convicted of being an habitual violator. At the time and date stated in the summons, *the court shall hold a hearing to determine the identity of the accused and the accuracy of the abstract of such person's record of convictions.*

"If the court finds that such accused person is not the same person as the accused named in such records, or that the convictions are not such as to constitute the accused 'an habitual violator' under this act, the prosecution shall be dismissed; but *if the court finds that the accused is the same person named in the records certified by the division, the court shall find such person guilty of being 'an habitual violator' of the motor vehicle laws of Kansas* and shall direct such person by appropriate order not to operate a motor vehicle on the public highways in this state. The clerk of the court shall file with the division a copy of such order which shall become a part of the permanent records of the division." (Emphasis added.)

"8-287. **Same; unlawful to operate vehicle when prohibited; penalties.** It shall be unlawful for any person to operate any motor vehicle in this state while any court order declaring such person to be an habitual violator and prohibiting such operation remains in effect. Any person found to be an habitual violator under the provisions of this act who is thereafter convicted of operating a motor vehicle in this state, while the order of the court prohibiting such operating is in effect, shall be guilty of a class E felony."

"8-289. **Appeals from final orders.** Any final order of a court entered pursuant to this act shall be appealable in the manner provided for appeals from other final orders of such court."

The defendant testified that he pled *nolo contendere* to the charge in the Municipal Court of Atchison, that he did not have the benefit of counsel in doing so, and that the court did not inquire of his knowledge of or advise him as to his various constitutional rights prior to entering a finding of guilty. At the Doniphan County proceeding, the defendant appeared with his father, pled guilty and again asserts the trial court did not advise him of his constitutional rights. Following defendant's testimony, counsel for defendant made various motions for dismissal and acquittal based upon the contention that as there was no affirmative showing in the division of vehicles records that defendant had been advised of all his constitutional rights at the time he entered his pleas in the City of Atchison and Doniphan County, and no showing that he knowingly, intelligently and voluntarily waived his rights, those prior convictions could not be considered as valid by the court. The court agreed as to the Doniphan County conviction and held "this case should be, and the same is hereby dismissed, the evidence being sufficient to establish only two valid convictions within the five-year period, the Doniphan County conviction being void."

At the outset the defendant raises the jurisdictional question of

the State's right to appeal and whether this case is properly before this court. It is argued that K.S.A. 8-286 is a criminal statute and as the evidence was found to be insufficient, the defendant has been acquitted of the charge against him. K.S.A. 22-3602 governs appeals in criminal cases and there is no doubt that the State does not have the right to appeal from a judgment of acquittal. *State v. Crozier*, 225 Kan. 120, Syl. ¶ 4, 587 P.2d 331 (1978). The State's argument is twofold. It is argued that the trial court judgment and order was not an acquittal and therefore the State's appeal is proper as an appeal under K.S.A. 22-3602(*b*)(1) from an order dismissing the complaint. The State's notice of appeal specified the appeal was being taken pursuant to that section of the statute. The State also argues that a proceeding under K.S.A. 8-286 is a civil proceeding and not a criminal one and therefore the criminal appeals statute is not controlling.

The first issue to be determined is whether K.S.A. 8-286 is a civil or a criminal statute. It must be conceded that the statute contains language usually found in criminal proceedings. The defendant is referred to as a "violator" and as the "accused"; the county or district attorney proceeds by way of "prosecution"; the "accused" is required to show cause why he or she should not be "convicted" of being an habitual violator; and depending upon the evidence, the "prosecution" shall be dismissed or the "accused" shall be found "guilty." Obviously, at first blush, the statute sounds criminal in nature.

However, a careful study of the statute and its results strongly indicates that despite the unfortunate use of criminal terms, the statute is actually civil in nature and the proceeding is civil rather than criminal. In *State v. Love*, 312 So. 2d 675 (La. App. 1975), a similar habitual violator statute was considered by the court. In its opinion the court stated:

"This is a proceeding to have a person declared an habitual offender and prohibited from operating a motor vehicle under the Motor Vehicle Habitual Offender Law, R.S. 32:1471-81.

"Adopted in 1972, the Motor Vehicle Habitual Offender Law defines an habitual offender as one who has accumulated within a five year period three or more convictions of certain listed offenses, or ten or more convictions of certain other traffic offenses. When any person has accumulated sufficient convictions to meet the definition of habitual offender under the Law, the Department of Public Safety must submit transcripts of the convictions to the District Attorney for the Judicial District in which the person resides, who then is directed to file a petition alleging that the person is an habitual offender. The court then is

required to issue a show cause order against the person involved, and, if at a hearing, it is found that the person is the one who was convicted and that the requisite convictions are included, then the person is ordered to surrender his driver's license. He may not obtain a new license for five years or until a court authorizes it. An appeal may be taken from any final action or judgment entered under the Law in the same manner and form as appeals in civil actions. During the period his license is revoked and ordered surrendered, he is not entitled to drive a motor vehicle on the public highways and, if he does, he may be prosecuted and subjected to imprisonment for not less than one nor more than five years. The law provides also that if any person shall be convicted in Louisiana of an offense which would render him an habitual offender he shall, in addition to the penalty otherwise prescribed by law, be fined not less than $100 nor more than $1,000 and be imprisoned for not less than 30 days nor more than 12 months. R.S. 32:1471-81.

. . . .

"The Motor Vehicle Habitual Offender Law authorizes both civil and criminal proceedings against a person related to his operation of a motor vehicle. The initial suit to have a person declared an habitual offender and to revoke his license is a civil matter. It does not involve loss of liberty or threat of incarceration, but its object is the protection of the public in removing from the highways a dangerous driver. R.S. 32:1474-78. On the other hand, two additional proceedings authorized by R.S. 32:1480 and 1481, which may result in enhancement of statutory penalties and imprisonment for driving while classified as an habitual offender, are clearly criminal actions. A previous civil declaration of habitual offender status is essential to the success of any subsequent criminal proceeding, but such prosecutions are necessarily separate and distinct from the civil revocation proceeding. Generally proceedings to revoke an automobile driver's license or to declare him an habitual offender are regarded as civil and not criminal actions. State v. Perreault, 311 A.2d 303 (N.H. 1973); State v. Bowles, 311 A.2d 300 (N.H. 1973); Huffman v. Virginia, 210 Va. 530, 172 S.E.2d 788 (1970); Parker v. State Highway Department, 224 S.C. 263, 78 S.E.2d 382 (1953); Commonwealth v. Harris, 278 Ky. 218, 128 S.W.2d 579 (1939); Ferguson v. Gathright, 485 F.2d 504 (4th Cir. 1973); Virginia ex rel. Shifflett v. Cook, 333 F. Supp. 718 (W.D. Va. 1971); Cf. Commonwealth v. James, 6 Pa. Cmwlth. 493, 296 A.2d 530 (1972); Woodham v. Williams, 207 So. 2d 320 (Fla. App. 1968); Gardner v. Department of Safety, 198 So. 2d 184 (La. App., 3d Cir. 1967); Marston v. Oliver, 485 F.2d 705 (4th Cir. 1973). Therefore, we conclude the suit here is a civil matter of which we have appellate jurisdiction." pp. 676-677.

The habitual violator statutes of Virginia are similar to ours and have been considered by the Virginia courts on several occasions. In *Whorley v. Commonwealth,* 215 Va. 740, 214 S.E.2d 447 (1975), the court had before it the question of whether an order adjudging a defendant an habitual offender could be based in part on a misdemeanor conviction obtained in the absence of counsel. The court found the proceedings were civil in nature and stated:

"The privilege of operating a vehicle on the highways of Virginia is granted to those who qualify. It is a privilege that can be withdrawn, revoked or suspended under certain conditions. A proceeding under Virginia's Habitual Offender Act is not a criminal proceeding. It is one designed solely to determine if the past record of an automobile driver is such that he has become a menace on the highways and is a habitual offender. In such a proceeding no fines are imposed, and no loss of liberty is involved. The only result of an adjudication of being a habitual offender is the entry by the court of an order directing such offender not to operate a motor vehicle on the highways of Virginia, and to surrender his license or permit to operate such a vehicle. The offender lives under no threat by the state of incarceration. He is deprived of no civil liberties, rights or privileges, other than the privilege of operating a vehicle on the highways. This privilege has been denied thousands of others who have run afoul of the motor vehicle laws of the state." p. 746.

The Supreme Court of Georgia in *Johnston v. State*, 236 Ga. 370, 223 S.E.2d 808 (1976), was faced with an appeal from a decision that Johnston was an habitual violator under the then-existing habitual violator statute. In that case various constitutional arguments were raised, including the right to trial by jury, double jeopardy, and right to counsel. In determining that none of Johnston's constitutional rights had been violated, the court stated:

"The habitual violator statute declared it to be the policy of the state to provide maximum safety for all persons who use the highways of the state; to deny the privilege of operating motor vehicles on such highways to persons who by their conduct, attitude and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of this state, the orders of her courts and the statutorily required acts of her administrative agencies, and to discourage repetition of criminal acts by individuals against the peace and dignity of this state and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws. Code Ann. § 92A-455.

. . . .

"The proceeding under the habitual offender statute is not a criminal proceeding. The sole purpose of the statute is designed to determine if the past record of a motor vehicle driver is such that he has become a menace on the highways and is a habitual offender. No fines are imposed and no loss of liberty is involved in the proceeding. The only result of the habitual violator statute is a direction by the court to such 'person not to operate a motor vehicle on the public highways of the State of Georgia.' Code Ann. § 92A-460." pp. 370-371.

In distinguishing between civil and criminal statutes, 1 Am. Jur. 2d, Actions § 43, p. 576, states:

"A criminal action is an action by the sovereign, or instituted on behalf of the sovereign, against one charged with the commission of a criminal act for the

enforcement of the penalty or punishment prescribed by law. It is the remedy of the state for infraction of its penal and punitive laws by prosecution for the enforcement of the penalties and punishment prescribed.

## 21 Am. Jur. 2d, Criminal Law § 14, p. 126, includes:

"[T]he legislature creates a criminal offense whenever it prescribes that a certain act be punishable either by fine or imprisonment or forbids it generally, and, by implication, empowers the imposition of either a fine or imprisonment."

## In 7A Am. Jur. 2d, Automobiles and Highway Traffic § 117, p. 287, we find:

"A proceeding under a statute providing for loss of driving privileges upon a finding of conviction of certain specified offenses within a specified period of time has been declared to be a civil proceeding, and that under such statute a person may be declared to be a habitual offender on the basis of prior convictions without benefit or waiver of counsel."

## K.S.A. 21-3105 defines a crime as follows:

"A crime is an act or omission defined by law and for which, upon conviction, a sentence of death, imprisonment or fine, or both imprisonment and fine, is authorized. Crimes are classified as felonies and misdemeanors."

When considering the nature of K.S.A. 8-286, the quasi-criminal language used is not the sole criteria for determining whether the statute is criminal or civil. K.S.A. 8-284 through 8-286 do not create any new crime. The statutes merely provide for the determination of a status of a particular individual driver and may result in the revocation of that person's privilege to drive upon the public highways. Revocation of a person's right to drive is not a sanction which makes the status of the defendant a crime as defined in K.S.A. 21-3105. No criminal sanctions are imposed such as are required in a criminal proceeding. There is no provision for a fine or imprisonment upon a finding that a person is an habitual violator. In many states such proceedings are handled at the administrative level without any involvement of the courts at the initial hearing.

We hold that a proceeding under K.S.A. 8-286 to determine whether a person is an habitual violator as defined in K.S.A. 8-285 is a civil proceeding and not a criminal proceeding. K.S.A. 8-289 grants either party the right to appeal from a final order under the act and the fact that the State erroneously designated its appeal as being pursuant to K.S.A. 22-3602 does not deprive the court of jurisdiction of the appeal when it was otherwise properly perfected.

Next, the appellant asserts that the evidence in this case is insufficient for the court to find he is an habitual violator because at least one of the underlying convictions was based upon a plea of guilty to the court and that the court failed to advise the defendant of his constitutional rights and there was no showing that he knowingly, intelligently and voluntarily waived those rights. Assuming defendant was not advised of his rights to counsel, jury trial, confrontation, subpoena, remain silent, etc., did such failure invalidate the convictions for purposes of determining defendant's status under K.S.A. 8-286? We think not.

Appellant relies upon several United States Supreme Court cases to support his argument, none of which is applicable to this proceeding. Among the cases relied upon are *Baldasar v. Illinois*, 446 U.S. 222, 64 L.Ed.2d 169, 100 S.Ct. 1585 (1980); *Scott v. Illinois*, 440 U.S. 367, 59 L.Ed.2d 383, 99 S.Ct. 1158 (1979); *Argersinger v. Hamlin*, 407 U.S. 25, 32 L.Ed.2d 530, 92 S.Ct. 2006 (1972); and *Gideon v. Wainwright*, 372 U.S. 335, 9 L.Ed.2d 799, 83 S.Ct. 792 (1963).

When the Supreme Court decided *Baldasar*, it considered *Gideon, Argersinger,* and *Scott.* Those earlier cases established the principle that for misdemeanor offenses, the right to counsel and right to appointed counsel for indigents do not rise to a constitutional dimension unless actual imprisonment was the result of the conviction. In *Baldasar*, the question presented was whether a prior uncounseled misdemeanor conviction for theft, from which no imprisonment resulted, could be used under an enhanced penalty statute to convert a subsequent misdemeanor theft into a felony with a prison term. Baldasar was convicted as a felon and sentenced to prison. The court rejected the argument that Mr. Baldasar was only being punished for his second conviction. If it had not been for the first conviction, the defendant could not have been sentenced as a felon in the later case.

"The sentence petitioner actually received would not have been authorized by statute but for the previous conviction. It was imposed as a direct consequence of that uncounseled [prior] conviction and is therefore forbidden under *Scott* and *Argersinger.*" Marshall, J., concurring, 446 U.S. at 227.

The court in *Argersinger* had said that an uncounseled conviction was not sufficiently reliable to support the serious consequence of imprisonment. Mr. Justice Marshall, in his *Baldasar* concurrence, concluded:

"An uncounseled conviction does not become more reliable merely because the accused has been validly convicted of a subsequent offense. For this reason, a conviction which is invalid for purposes of imposing a sentence of imprisonment for the offense itself remains invalid for purposes of increasing a term of imprisonment for a subsequent conviction under a repeat-offender statute." pp. 227-228.

In *State v. Skeen*, 3 Kan. App. 2d 231, 592 P.2d 150 (1979), our Court of Appeals considered an appeal from a finding of the trial court that Skeen was an habitual violator in proceedings under K.S.A. 8-284 *et seq.* In that case, it was argued that the State was required to make an affirmative showing that defendant had been represented by counsel at the times of his trials for the underlying offenses or that he had knowingly, intelligently and voluntarily waived his right to counsel. The court considered *Argersinger* and *Scott* and stated:

"As actual imprisonment was not a factor as a result of any of the three convictions on which these proceedings are based, it follows that the State was not required to make an affirmative showing that defendant had been represented by counsel in those proceedings or had knowingly, intelligently and voluntarily waived that right." pp. 232-233.

The question of whether an action under K.S.A. 8-286 was civil or criminal was not an issue in *Skeen.*

We agree with the construction of *Argersinger* and *Scott* as stated in *Skeen* but do not find those cases applicable to a civil proceeding under K.S.A. 8-286. Neither is *Baldasar*. Whatever application the rules promulgated under *Argersinger, Scott* and *Baldasar* may have in a direct attack upon a prior criminal conviction, or in an action under K.S.A. 60-1507, those rules do not apply to the same extent in a civil proceeding to determine a person's status as an habitual violator of the traffic laws. The prior convictions of the defendant in this action are not now subject to attack in an action under K.S.A. 8-286 based upon allegations that defendant was deprived of his constitutional rights in the prior criminal cases. An action under K.S.A. 8-286 is a civil action and the constitutional guarantees as applied in criminal proceedings are not applicable to the same extent in such a civil case. The attempt to assert a collateral attack in this action upon prior criminal convictions, based upon an alleged failure to show the defendant in those actions did not knowingly, intelligently and voluntarily waive his various constitutional rights, lacks merit.

In *State v. Wood,* 231 Kan. 699, 647 P.2d 1327 (1982), this court considered an appeal by the State in an action brought under K.S.A. 8-286. While there is language in the opinion touching on the nature of such an action, the issue of whether it was a civil or criminal action based upon a civil or criminal statute was not directly before the court and was not germane to the decision.

It should be noted that in the instant case we are not dealing with enhancement of a criminal sanction based upon a prior conviction as in *Baldasar.* We are not even dealing with a criminal charge. In *State v. Jones,* 592 S.W.2d 906 (Tenn. Crim. App. 1979), the court states:

"Appellant contends the judgment finding him to be an habitual motor vehicle offender is null and void in that he was not represented by counsel at the show-cause hearing. '[P]roceedings to revoke or suspend driving privileges [are] civil in nature and not criminal.' *Everhart v. State,* 563 S.W.2d 795, 797 (Tenn. Crim. App. 1978). The full panoply of rights that attach to a defendant in a criminal proceeding do not exist to the same extent in a civil proceeding." p. 908.

We are not called upon, and do not here determine, the merit of defendant's arguments if he were being prosecuted for a criminal act under K.S.A. 8-287. That question, however, was also considered in *Whorley v. Commonwealth,* a case decided before the decision in *Baldasar,* and in *Whorley* the court stated:

"If a habitual offender subsequently decides to take the law into his own hands by operating a motor vehicle on the public highways without a valid permit, he becomes subject to prosecution under a criminal law which deals with habitual offenders who drive without a license, and he may receive a greater penalty than a defendant who is not a constant violator of traffic laws. This situation does not arise because of any previous conviction that he may have had during the time that he was accumulating the record that made him a habitual offender. It occurs solely because of his subsequent and deliberate defiance of the law.

"A previous conviction and a habitual offender adjudication only bear indirectly on the criminal process that places such offender in peril of imprisonment. In the instant case it was not the Lynchburg conviction that jeopardized Whorley's liberty. It was the fact that after he had been adjudged a habitual offender he voluntarily involved himself in the commission of a criminal act in Campbell County. The link between Whorley's uncounseled misdemeanor conviction in Lynchburg and his conviction for driving in Campbell County after being adjudged a habitual offender is not only remote, but would be nonexistent except for the deliberate commission of a criminal act by defendant. It was his option, and by his choice, that his liberty was placed in jeopardy." 215 Va. at 746-747.

K.S.A. 8-286 sets forth what is necessary for an adjudication of an individual as an habitual violator. If an abstract of the records from the division of vehicles reflects three convictions of viola-

tions specified in K.S.A. 8-285, and if the court finds that the defendant before the court is the same person named in the convictions, sufficient evidence exists to determine the defendant's status to be that of an habitual violator. In the instant case, the convictions are admitted and defendant also admits he is the person named in the convictions.

The judgment is reversed and the case is remanded to the district court with directions that the court enter judgment finding John N. Boos to be an habitual violator under the terms of K.S.A. 8-286.