No. 126,521

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITIZENS BANK, N.A.,
*Appellant*,

v.

GREGORY GASKINS and DARLENE GASKINS,
*Appellees*.

SYLLABUS BY THE COURT

1.

In Kansas, civil judgments are active for five years. Within a five-year period, the prevailing party must move to enforce the civil judgment. Should the five years pass without the respective party executing on the judgment, the judgment, including court costs and fees therein, shall become dormant.

2.

Under K.S.A. 60-2404, a dormant judgment may be revived and have the same force and effect as if it had not become dormant if the holder thereof files a motion for revivor within two years after the judgment became dormant and files a request for the immediate issuance of an execution thereon if such motion is granted. The plain language of K.S.A. 60-2404 does not require a party to simultaneously file a motion for revivor and a request for the immediate issuance of an execution. Once the judgment is revived, the revived judgment has the same force and effect as if it had not become dormant.

3.

A party may, by the issuance of an execution every five years, keep a judgment alive indefinitely. However, if the judgment grows dormant and is not revived in the two-year period, the judgment does not have any binding legal effect and is unenforceable.

4.

The legislative intent of the dormant revivor statute, K.S.A. 60-2404, is to provide the holder of a judgment with the ability to revive a dormant judgment within a two-year period.

5.

K.S.A. 60-2419 provides that a holder of a judgment is entitled to have an order for a hearing in aid of execution when (1) an execution is returned unsatisfied either in whole or in part; or (2) when the holder of a judgment states that it is without sufficient knowledge of the debtor's assets to advise the sheriff where and on what to levy execution.

6.

A judgment holder will request an aid of execution proceeding to assist in obtaining satisfaction of a prior judgment; thus, the purpose of seeking an aid of execution is remedial.

7.

As applied to the dormant revivor statute, K.S.A. 60-2404, the term "forthwith" means without unnecessary delay and requires reasonable exertion and due diligence consistent with all the facts and circumstances of the case.

Appeal from Geary District Court; RYAN W. ROSAUER, judge. Submitted without oral argument. Opinion filed March 21, 2025. Reversed and remanded with directions.

2

*Stephanie B. Poyer*, of Butler & Associates, P.A., of Topeka, for appellant.

*Aaron R. Bailey*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, for appellees.

Before GREEN, P.J., GARDNER and PICKERING, JJ.

PICKERING, J.: We are tasked with deciding an issue involving a question of first impression regarding reviving dormant civil judgments: Is the holder of a judgment required to simultaneously file a motion for revivor with a request for the immediate issuance of an execution in order for the execution to "issue forthwith" as provided in K.S.A. 60-2404? Here, the judgment creditor requested an aid of execution proceeding; however, the question remains the same.

The appeal stems from an action by Citizens Bank, N.A. (Bank), to revive a dormant judgment against Gregory and Darlene Gaskins. The Bank first timely filed a motion for revivor, which the district court initially granted. The Bank subsequently filed a request for an aid of execution, and a hearing was scheduled. After failing to appear for the scheduled aid of execution hearing, the Gaskins filed a motion for relief, claiming that, under K.S.A. 60-2404, the Bank was required to file a request for the immediate issuance of an execution simultaneously *with* its motion for revivor. In its interpretation of K.S.A. 60-2404, the district court agreed, ruling the two documents must be filed together in order for the execution to "issue forthwith." The district court found that the Bank's actions failed to adhere to K.S.A. 60-2404's requirement that the execution issue "forthwith." The district court granted the Gaskins' motion by setting aside the order of revivor and relieving the Gaskins from the judgment.

On appeal, the Bank contends that it correctly filed a request for an aid of execution proceeding after the order of revivor issued. After consideration of the filing

requirements set forth in K.S.A. 60-2404 and how "forthwith" has been defined by our courts, we find merit in the Bank's argument. We therefore reverse and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

This case began in 2015 as a replevin petition when the Bank sought possession of a Gulf Stream Sun Sport recreational vehicle (RV) from the Gaskins. The Bank obtained a default judgment against the Gaskins on June 23, 2015, for a principal balance of $37,954.51, plus costs, interest, and attorney fees. The Bank was granted immediate possession and, upon the sale of the RV, judgment for the deficiency balance. Sometime after the lawsuit began, the Bank learned that the RV had been sold at a public auction. The public auction sale of the RV has not been disputed by the parties. Then, on September 1, 2015, due to an error in communication, the Bank filed a notice of satisfaction of judgment. The Gaskins did not object.

In late 2021, the Bank discovered that the judgment had not been satisfied and filed a motion to set aside or relief from errant filing of notice of satisfaction. The Gaskins did not object, and the district court granted the motion to set aside. On February 10, 2022, the Bank filed a motion for revivor of dormant judgment. The Gaskins did not file an objection. Following a hearing on the Bank's motion, the district court granted the motion for revivor and issued its order on March 28, 2022. On June 2, 2022, the Bank filed a request for an aid of execution, which the district court granted and issued an order for the Gaskins to appear for the August 15, 2022 aid of execution hearing.

On June 15, 2022, the Bank was able to obtain residence service on the Gaskins, notifying them to appear at the scheduled August 15, 2022 aid of execution hearing. The Gaskins did not appear, and the district court ordered citations for indirect contempt of court. The court set the citation hearing for October 26, 2022. Both Gaskins were

4

served—Gregory by personal service and Darlene by residential service. The Gaskins did not appear for the citation hearing. Because Gregory was personally served, the district court ordered a bench warrant for Gregory, who was arrested and ordered to appear.

Before the next aid of execution proceeding, the Gaskins filed a motion for relief from final judgment under K.S.A. 2022 Supp. 60-260(b)(4), claiming the revivor order should be set aside because the Bank had failed to meet the filing requirements of K.S.A. 60-2404. The parties filed briefs on their respective positions in the district court. The Gaskins argued that the journal entry of judgment, order reviving the judgment, journal entry of hearing, and citation in contempt order were all void because "mandatory procedures" were not followed.

The Gaskins argued that K.S.A. 60-2404 requires the Bank to file a motion for revivor with a request for the immediate issuance of an execution. They claimed that the second requirement—filing a request for immediate issuance of execution—never occurred, despite the mandatory nature of the statute. The Gaskins focused on the word "immediate," which is taken from the statute's first sentence—"files a request for the immediate issuance of an execution"—and argued that the term "immediate" meant the Bank was to "file a motion for a hearing in aid of execution immediately." The Bank responded that the Gaskins' argument was not supported by statute or caselaw and the Gaskins' proposed definition of "immediately" was not reasonable. The Bank contended that it acted in accordance with the statute and if the court were to adopt the Gaskins' reasoning, it would arbitrarily shorten those deadlines.

The district court heard arguments on the briefs, wherein counsel reiterated their written arguments. The Gaskins argued that the time from the district court's March 28, 2022 order reviving judgment to the June 2, 2022 aid of execution request was not "immediate" and 66 days was too long (counting from March 28, 2022 to June 2, 2022). The district court issued its memorandum decision on March 29, 2023, stating that "[t]he

parties disagree about the meaning of the word 'immediate.'" The court noted the Gaskins' belief that "immediately upon the issuance of the order to revive, Plaintiff should have issued the execution." The court's decision remarked how "[t]he statute uses the conjunctive 'and' when stating '. . . files a motion for revivor and files a request for the immediate issuance of an execution . . . .'" The court explained:  "In other words, if the court grants the motion, the attached execution can 'issue forthwith.' If the court denies the revivor, then the attached proposed execution has no legal effect. Filing the execution with the motion for revivor is how the execution can be issued 'forthwith.'"

With this interpretation of K.S.A. 60-2404, the district court stated that it had looked at the time from February 10, 2022, the date when the Bank initially filed its motion for revivor, to June 2, 2022. The court noted in its decision that it was not starting at the point when the district court had issued an order of revivor on March 28, 2022. The court found that by its calculation from February 10, 2022 to June 2, 2022 the Bank "waited a little less than four months." The court stated:  "Whatever the definition of immediate, four months later is not immediate. . . . In addition, the execution was not issued 'forthwith.'" Based on this reasoning, the district court found that the execution did not issue "forthwith." The court granted the Gaskins' motion for relief from final judgment.

The Bank appeals.

ANALYSIS

*The District Court Erred in Setting Aside the Revivor*

On appeal, the Bank challenges the district court's ruling that the Bank erred by not filing the motion to revive and the request for immediate issuance of an execution simultaneously, and thus the execution of the judgment would not have been able to issue

6

"forthwith" as stated in the statute. Although the Bank asserts that the clause "if such motion is granted" is ambiguous, the Bank contends a reasonable reading of the statute is that after the motion for revivor is granted, the request for issuance of an execution should be filed. The Bank also argues that defining "forthwith" to mean immediate does not comport with caselaw discussing the definition of "forthwith."

In contrast, the Gaskins continue with their argument that K.S.A. 60-2404 requires the holder of the judgment to file a motion to revive the dormant judgment "and" an immediate issuance for execution. They argue that there can be no other statutory meaning but to file the revival motion and aid of execution request simultaneously. Therefore, the district court's ruling should be upheld.

A.      *The district court erred in its interpretation of K.S.A. 60-2404.*

*Standard of review*

Our statutory interpretation of K.S.A. 60-2404 presents a question of law over which appellate courts have unlimited review. See *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 293 Kan. 633, 640, 270 P.3d 1074 (2011). "The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. [Citation omitted.]" *H.B. v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368 (2022). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 200, 506 P.3d 267 (2022). "'We will only review legislative history or use canons of construction if the statute's language or text is ambiguous.'" *Chalmers v. Burrough*, 314 Kan. 1, 8, 494 P.3d 128 (2021).

*We review the procedure for reviving a dormant judgment in Kansas.*

In Kansas, civil judgments are active for five years. Within a five-year period, the prevailing party must move to enforce the civil judgment. Should the five years pass without the respective party executing on the judgment, "the judgment, including court costs and fees therein shall become dormant." K.S.A. 2023 Supp. 60-2403(a)(1).

The dormant judgment may be revived if the holder of the judgment files a motion for revivor within two years after the judgment became dormant. Once the judgment is revived, the revived judgment has the "same force and effect" as if it had not become dormant. K.S.A. 60-2404. Should, however, the judgment grow dormant and is not revived in the two-year period, the judgment does not have any binding legal effect and is unenforceable. *In re Marriage of Doud and Modrcin*, 59 Kan. App. 2d 244, 250, 480 P.3d 800 (2020). At that point, the judge has the duty "to release the judgment of record when requested to do so." K.S.A. 2023 Supp. 60-2403(a)(1); see *Associated Wholesale Grocers, Inc.*, 293 Kan. at 640.

K.S.A. 60-2404, which sets forth the process for reviving a dormant judgment, states in its entirety:

>    "A dormant judgment may be revived and have the same force and effect as if it
> had not become dormant if the holder thereof files a motion for revivor and files a request
> for the immediate issuance of an execution thereon if such motion is granted. Notice of
> the filing of the motion shall be given as for a summons under article 3 of this chapter. If
> the motion for revivor was filed within two years after the date on which the judgment
> became dormant or, in the case of a child support judgment, was filed during the period
> prior to the child's emancipation, within two years after the child's emancipation or within
> two years after the judgment became dormant, whichever is later, on the hearing thereof
> the court shall enter an order of revivor unless good cause to the contrary be shown, and
> thereupon the execution shall issue forthwith. On the hearing of a motion to revive a child

support judgment, the court may enter an order to prevent the unjust enrichment of any party or to ensure that payments will be disbursed to the real party in interest. A judgment may also be revived by the filing of a written stipulation of revivor signed by all of the parties affected thereby. For the purpose of this section, a support enforcement proceeding, as defined by K.S.A. 60-2403 and amendments thereto, or any attachment or garnishment process shall have the same effect as the issuance of an execution."

The Kansas Supreme Court has historically held that dormancy statutes should be strictly construed. *DeKalb Swine Breeders, Inc. v. Woolwine Supply Co.*, 248 Kan. 673, 679, 809 P.2d 1223 (1991). The revival procedure "is purely statutory in its origin and can be accomplished only in the manner and under the conditions prescribed by statute." *First Federal Savings & Loan Assn. v. Liebert*, 195 Kan. 100, 101, 403 P.2d 183 (1965). Indeed, our own court "looked at the historical treatment of dormancy and revivor statutes in this and other states and distinguished those statutes from ordinary statutes of limitation by declaring that '[r]evivor statutes demand strict compliance and allow for no exceptions.' *Clark v. Glazer,* 4 Kan. App. 2d 658, 660, 609 P.2d 1177 (1980)." *Associated Wholesale Grocers, Inc.*, 293 Kan. at 646.

Equipped with this understanding that we must strictly construe dormancy statutes, we turn our attention to the district court's interpretation of K.S.A. 60-2404. In its memorandum decision, the district court focused on the following portion of K.S.A. 60-2404:

> "A dormant judgment may be revived and have the same force and effect as if it had not become dormant if the holder thereof files a motion for revivor and files a request for the immediate issuance of an execution thereon if such motion is granted. . . . [O]n the hearing thereof the court shall enter an order of revivor unless good cause to the contrary be shown, and thereupon the execution shall issue forthwith."

The district court noted the Gaskins' belief that "immediately upon the issuance of the order to revive, [the Bank] should have issued the execution." The court stated its belief that, under K.S.A. 60-2404, "the debt holder must file the execution with the filing of the motion for revivor." The court explained that "[t]he statute uses the conjunctive 'and' when stating '. . . files a motion for revivor and files a request for the immediate issuance of an execution thereon if such motion is granted.' In other words, if the court grants the motion, the attached execution can 'issue forthwith.'"

The district court further reasoned that if not for the requirement of an immediate execution, "then a creditor could legally hold a debt over a person for another five years plus, presumably, another two during which the creditor could presumably revive the debt again." Also, the district court opined as to the purpose of K.S.A. 60-2404: "This law is intended to force creditors to either execute or not execute and let debtors move on with their lives once and for all."

We note that, once the district court granted the motion to revive, requesting an immediate issuance of an execution in this case would have been fruitless. Due to the Gaskins selling the RV, which was awarded in the 2015 judgment, seeking an immediate issuance of an execution would have been useless. See *Benson v. Altenburg*, 124 Kan. 296, 298, 259 P. 791 (1927) (holding issuance of execution would have availed no useful purpose when "the plaintiff shows a valid judgment, and it was established that suing out an execution would have been fruitless"); see also *Byron State Bank v. Creek*, 101 Kan. 552, 553, 167 P. 1053 (1917) (recognizing that "[t]he formality of a useless execution was not essential"). The Bank had to seek a proceeding an aid of execution to assist "in obtaining satisfaction of a prior judgment." *Cyr v. Cyr*, 249 Kan. 94, Syl. ¶ 4, 815 P.2d 97 (1991); K.S.A. 60-2419. Further, our Supreme Court has recognized that an execution and an aid of execution share the same purpose—collecting on a favorable judgment. 249 Kan. at 100.

10

*The district court's interpretation disagrees with the plain language of the statute.*

The district court's ruling disregarded the placement of K.S.A. 60-2404's clause "if such motion is granted" at the end of the statute's first sentence. The district court essentially "read out" the "if such motion is granted" clause from the first sentence, which is a departure from how a statute should be read. See *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 6, 154 P.3d 494 (2007) ("A statute should not be read to add that which is not contained in the language of the statute or to *read out what*, as a matter of ordinary language, is included in the statute." [Emphasis added.]). Instead, the court applied the clause to the last sentence of the statute, stating: "In other words, *if the court grants the motion*, the attached execution can 'issue forthwith.'" (Emphasis added.) We disagree.

Under a plain reading of the statute, one cannot ignore where the Legislature has chosen to place a clause or phrase. We "presume that the legislature does not use redundant language, and we try to give meaning to every word in the statute." *Wing v. City of Edwardsville*, 51 Kan. App. 2d 58, 63, 341 P.3d 607 (2014). Additionally, "'a statute should be so construed that effect be given if possible to every clause and section of it.'" *Wyandotte County Comm'rs v. Adams*, 155 Kan. 160, 163, 123 P.2d 818 (1942). We thus cannot disregard the Legislature's decision to place the "if such motion is granted" clause following the "request for the immediate issuance of an execution thereon" clause.

We also cannot overlook the word "thereon" as it is positioned in the scrutinized provision:  "[I]f the holder thereof files a motion for revivor and files a request for the immediate issuance of an execution *thereon* if such motion is granted." (Emphasis added.) The word "thereon" means "1. On or upon this, that, or it. 2. . . . . Following that immediately; thereupon." American Heritage Dictionary 1806 (5th ed. 2016). Basically, the term "thereon" refers back to a thing that has previously been mentioned.

11

Here, the word's placement right after "a request for the immediate issuance of an execution" but before "if such motion is granted" is significant: "Thereon" links the two events together in a cause-and-effect manner. That is, *if* the motion for revivor is granted, *then* (referring back) the holder of the judgment should file a request for the immediate issuance of an execution. The term also ensures that the phrase "if the motion is granted" is followed. Thus, a reasonable reading of the statute is that a request for the immediate issuance of an execution is contingent upon the motion for revivor being granted.

Illustrating this point is *Young v. Cinnamon*, No. 00-MC-209-KHV, 2006 WL 3026739 (D. Kan. 2006) (unpublished opinion). There, the plaintiff recognized the connective nature of the dormancy statute when filing a motion to revive judgment. In its filing, the plaintiff advised the court of its intent to file a request for execution of the judgment if the district court granted its motion to revive. 2006 WL 3026739, at *2. In sustaining the motion to revive judgment, the *Young* court did not address or correct the plaintiff's intention to file the request for execution if the court granted the revivor motion.

Additionally, the next sentence of the statute sheds further light. It reads: "*If the motion for revivor was filed* within two years after the date on which the judgment became dormant . . . , on the hearing thereof the court shall enter an order of revivor unless good cause to the contrary be shown, and thereupon the execution shall issue forthwith." K.S.A. 60-2404. The statute only refers to the motion to revive and does not include any reference to a request for the execution to immediately issue. In essence, it is only the filing of the motion to revive that necessitates a hearing on the revival motion. For example, in *Arch Roofing & Restoration Co. v. Garcia*, No. 123,822, 2022 WL 817280, at *2 (Kan. App. 2022) (unpublished opinion), another panel of this court reviewed the dormancy and revival statutes and held that Arch Roofing's "motion to revive judgment under K.S.A. 60-2404 was timely filed and the district court has jurisdiction to consider the motion." The panel did not reference any statutory

12

requirement that Arch Roofing was required to simultaneously file a request for execution with its motion to revive. The statute's language is not ambiguous.

Our review of Kansas statutes demonstrates that the Legislature is aware of how to draft specific language requiring simultaneous filings. See K.S.A. 58-3113 ("Simultaneously with the recording of the declaration there shall be filed in the office of the recording officer a set of the floor plans . . . ."); K.S.A. 2023 Supp. 58-3707(a) ("There shall be recorded simultaneously with the declaration, at the office of the register of deeds, one or more plats of survey showing the legal description . . . ."); K.S.A. 17-7685a(i) ("The certificate of division and each articles of organization for each resulting company required by subsection [h] shall be filed simultaneously in the office of the secretary of state . . . ."); K.S.A. 19-224 ("The clerk of the board, upon such appeal being taken, . . . shall make out a brief return of the proceedings in the case before the board, with their decision thereon, and *shall file the same, together with the bond and all the papers in the case in his or her possession*, with the clerk of the district court." [Emphasis added.]); cf. K.S.A. 23-36,609 (party's petition seeking to modify child support order issued in another state "*may* be filed at the same time as a request for registration" of the order [emphasis added]). The Legislature's failure to specify that the documents must be filed at the same time, such as including the word "simultaneously" or its equivalent within the revivor statute, therefore reflects a legislative intent for the judgment creditor to seek an execution once the court has issued an order of revivor.

*Requiring simultaneous filings of a revival motion and an execution request may result in a futile exercise.*

Our courts have repeatedly stated that "'[a] construction of a statute should be avoided which would render the application of a statute impracticable or inconvenient, or which would require the performance of a vain, idle, or futile thing, or attempt to require the performance of an impossible act.'" *KPERS v. Reimer & Koger Assocs., Inc.*, 262

13

Kan. 635, 643, 941 P.2d 1321 (1997); *Snider v. MidFirst Bank*, 42 Kan. App. 2d 265, 272, 211 P.3d 179 (2009). Yet, under the district court's interpretation, requiring simultaneous filing of the motion to revive a dormant judgment and a request for immediate issuance of an execution could result in a useless or meaningless exercise. It is not uncommon for a district court to deny a motion to revive. For instance, the motion to revive may be dismissed if the holder of the judgment files the motion outside the statutory deadline. See *DeKalb Swine Breeders, Inc*., 248 Kan. at 680 (finding district court correctly denied motion to revive judgment because motion was filed over seven years after original garnishment and thus not subject to revival). As a result of the court dismissing the motion to revive, the court would then have to dismiss the prematurely filed request for the immediate issuance of an execution—which is a waste of judicial resources.

This case is illustrative of that possibility. The Bank would be required to prematurely coordinate a proposed hearing on its request for aid of execution hearing without knowing whether the hearing would be held. See K.S.A. 60-2419. The Bank would have to contact the court and opposing counsel to schedule a hearing and begin service for a hearing that may never occur. See K.S.A. 60-2419 ("[T]he judgment debtor [is] to appear and answer concerning the debtor's property and income, before the judge, or a referee appointed by the judge, at a time and place specified in the order.").

Not surprisingly, at the Gaskins' motion for relief hearing, the Bank emphasized to the district court that a request for an aid of execution proceeding requires coordinating with both the parties' availability and the court's own calendar: "You have to get a date from the Court when they're available, and you have to have that to get the application, and then get that order issued for the aid." We should therefore avoid reading into the statute a filing requirement that may be fruitless.

14

*Kansas courts have defined "forthwith" to mean without unnecessary delay.*

In its memorandum decision, the district court emphasized that unless a request for immediate issuance of an execution and a motion for revivor are filed together, the execution cannot issue "forthwith" as required by the statute. The district court's ruling suggests that it interpreted "forthwith" to mean immediately: "Whatever the definition of immediate, four months later [February 10 to June 2] is not immediate. For that matter, neither is a little over two months (late March to early June). In addition, the execution was not issued 'forthwith.'" The Bank argues interpreting "forthwith" to mean immediate does not agree with prior Kansas caselaw.

In *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 130 P.3d 560 (2006), the court considered whether the Kansas Department of Revenue (KDR) had followed K.S.A. 8-1020(d), which requires hearings for administrative suspension of driving privileges (based on refusal to submit to breath alcohol tests) to be "forthwith set." The KDR appealed two district court rulings (the appeals were consolidated) which vacated two motorists' driving suspensions because KDR failed to "'forthwith set'" the suspension hearings. The two motorists, Foster and Griggs, argued the district court's rulings should be affirmed because KDR failed to "forthwith set" both of their hearings. Foster's hearing date was set 59 days after his hearing request, and his case was heard 78 days later; Griggs' hearing date was set 55 days after his hearing request, and his hearing was held 35 days later. In determining how the term "forthwith" was defined, the court considered Kansas caselaw, including two earlier civil cases: *State v. Garton*, 2 Kan. App. 2d 709, 586 P.2d 1386 (1978); and *Haworth v. Kansas Dept. of Revenue*, No. 89,325, 2003 WL 21981949 (Kan. App. 2003) (unpublished opinion).

The *Garton* panel addressed whether the county attorney followed K.S.A. 8-286 (Weeks) when scheduling Garton's habitual violator driver's license hearings. Under this statute: "Upon receiving said abstract [from the division of vehicles] the district or county

15

attorney *forthwith* shall commence prosecution of such person in the district court."
(Emphasis added.) K.S.A. 8-286 (Weeks). The Driver Control Bureau had provided the
county attorney with an abstract of Garton's driving record that required a habitual
violator hearing; however, Garton was incarcerated at the time. Thirteen months later,
after Garton was released from prison, the county attorney began habitual violator
proceedings.

In its determination of the proper definition for "forthwith," the *Garton* panel
found the stated purpose of the habitual violator driver statutes "is not to benefit a
habitual violator; rather it is to provide maximum safety for all people who use the public
highways by depriving habitual violators of the privilege of operating motor vehicles on
the public highways of this state." 2 Kan. App. 2d at 710-11. The panel viewed the term
"forthwith" as a directive of the district or county attorney's duty to the public by
enhancing public safety through "removing habitual violators from public highways at
the earliest opportunity." 2 Kan. App. 2d at 711.

The panel concluded: "The term forthwith as used in K.S.A. 8-286 does not mean
immediately and is not susceptible to a fixed time definition." 2 Kan. App. 2d at 711.
Instead, "it means without unnecessary delay and requires reasonable exertion and due
diligence consistent with all the facts and circumstances of the case in order to carry out
the legislative intent of removing habitual violators from the public highways of this state
for an extended period of time." 2 Kan. App. 2d at 711. In applying this meaning of
"forthwith," the panel found the county attorney had commenced proceedings against
Garton without unnecessary delay and affirmed the court's ruling. 2 Kan. App. 2d at 712.

In *Haworth*, another panel of our court considered the same issue as in *Foster*:
whether KDR had properly "forthwith set" hearings for administrative suspension of
driving privileges in accordance with K.S.A. 8-1020(d). Haworth challenged his license
suspension, asserting KDR did not "set" his administrative hearing as statutorily required

16

and arguing "'set' . . . should be interpreted to mean 'conduct.'" 2003 WL 21981949, at *3. The hearing was scheduled within one month of Haworth's request and held 73 days after Haworth's request. In its application of "forthwith set," the *Haworth* panel applied *Garton*'s interpretation of the meaning of "forthwith" and, after discussing the definition of "set" as defined in *Mutual Bldg. & Loan Assn. v. Corum*, 220 Cal. 282, 291, 30 P.2d 509 (1934), determined "'set' . . . means to schedule a hearing." 2003 WL 21981949, at *3. Thus, the panel found the combined interpretations of "set" and "forthwith" meant "that the hearing should be scheduled without unnecessary delay" and that KDR had scheduled and held the hearing in accord with K.S.A. 8-1020(d). 2003 WL 21981949, at *3-4.

After considering these two cases along with other Kansas appellate decisions, the *Foster* court adopted the definition of "forthwith" as stated in *Garton* and *Haworth* in the context of license suspensions: "'[F]orthwith' . . . does not mean immediately and is not susceptible to a fixed time definition; rather, it means without unnecessary delay and requires reasonable exertion and due diligence consistent with all the facts and circumstances of the case in order to carry out the legislative intent . . . ." *Foster*, 281 Kan. 368, Syl. ¶ 3. Similar to *Garton*, the court also considered the stated purpose of the law, concluding the statute should be interpreted from the public's perspective, not the licensee. In some cases, "KDR may necessarily need more than 30 days to set the hearing. If the delay in setting the hearing was necessary and did not result from a lack of due diligence or reasonable exertion on its part, then the setting is forthwith and complies with the statute." 281 Kan. at 377. Due to the district court ruling as a matter of law that the setting was not forthwith and not making the necessary factual findings to support its ruling, the case was remanded to district court. 281 Kan. at 377.

17

*Foster and earlier cases are instructive for how to define "forthwith" under K.S.A. 60-2404.*

We now turn to this case with an understanding of the definition of "forthwith" as used in the other civil cases. See *State v. Boos*, 232 Kan. 864, 867, 659 P.2d 224 (1983) (Habitual violator statute, K.S.A. 8-286, "is actually civil in nature and the proceeding is civil rather than criminal."). As previously mentioned, K.S.A. 60-2404 states in part: "[O]n the hearing thereof the court shall enter an order of revivor unless good cause to the contrary be shown, and thereupon the execution shall issue forthwith." As applied to the dormant revivor statute, our research has not disclosed any Kansas cases that have defined or construed the term "forthwith." We thus undertake defining the term "forthwith" presented in K.S.A. 60-2404.

Following *Garton* and *Foster*, we consider the purpose of the dormant revivor statutes. First, we address the district court's reasoning for requiring an immediate execution under K.S.A. 60-2404. The district court stated that the purpose of K.S.A. 60-2404 is "to force creditors to either execute or not execute and let debtors move on with their lives once and for all." The court continued, that if not for the "requirement of an immediate execution, then a creditor could legally hold a debt over a person for another five years plus, presumably, another two during which the creditor *could presumably revive the debt again*." (Emphasis added.) This reasoning, however, does not consider the perpetual nature of a civil judgment; a creditor may do exactly as the district court described.

In explaining how K.S.A. 2023 Supp. 60-2403 and K.S.A. 60-2404 function, our Supreme Court recognized that "'a party may, by the issuance of an execution every five years, *keep a judgment alive indefinitely*.'" (Emphasis added.); *DeKalb Swine Breeders, Inc.*, 248 Kan. at 677. "The judgment remains in force without execution for five years, and the plaintiff may revive it at any time within two years if it has become dormant

18

thereafter . . . . [A] plaintiff may neglect his [or her] judgment for seven years, lacking a day, and then revive and put it in force for five years more." *Riney v. Riney*, 205 Kan. 671, 680, 473 P.2d 77 (1970).

The stated purpose of K.S.A. 60-2404 is not to benefit the debtor; rather it is to provide the judgment creditor with the ability to revive a dormant judgment within a two-year period. This intent of providing a means for the judgment creditor to cure a dormant judgment is exemplified in the corresponding aid of execution proceeding, which "assists the judgment creditor in obtaining satisfaction of a prior judgment." *Cyr*, 249 Kan. 94, Syl. ¶ 4; see K.S.A. 60-2419. A plaintiff's ability to keep a judgment alive indefinitely thus sharply disagrees with the district court's stated purpose of dormant revival statutes.

Second, in practical terms, we consider what is required from a judgment creditor when seeking to revive a dormant judgment. See *Haworth*, 2003 WL 21981949, at *3 (in defining "'forthwith set,'" panel considered steps KDR must undertake before setting administrative hearing date). Sufficient time is required to ensure that the summons has been sent in advance of the hearing on the motion to revive. K.S.A. 60-2404 ("Notice of the filing of the motion [to revive] shall be given as for a summons under article 3 of this chapter.").

In other circumstances, the judgment creditor may need to seek an aid of execution under K.S.A. 60-2419. See *Cyr*, 249 Kan. 94, Syl. ¶ 4. A judgment creditor is entitled to have an order for a hearing in aid of execution when (1) an execution "is returned unsatisfied in whole or in part" or (2) when a judgment creditor states that it is "without sufficient knowledge of the debtor's assets to advise the sheriff where and on what to levy execution." K.S.A. 60-2419. Such a hearing requires a prescheduled hearing date and time to ensure the judgment debtor appears, particularly since failure to appear would result in a contempt of court ruling. See K.S.A. 60-2419 (Statute requires the judgment debtor "to appear and answer concerning the debtor's property and income, before the

19

judge, or a referee appointed by the judge, at a time and place specified in the order. . . . If [a] person fails . . . to appear . . . , the person shall be guilty of contempt of court.").

This general overview demonstrates that the term "forthwith" is not defined as immediately, due to the possibility of required personal service, summons, and presetting hearings. Adopting this definition would lead to implausible results. Also, the term "immediate" as used in the statute relates to the judgment creditor requesting an immediate issuance of the execution. We are not persuaded by the Gaskins' argument that the Bank was required to "file a motion for a hearing in aid of execution immediately." Instead, we hold that "forthwith" means without unnecessary delay and requires reasonable exertion and due diligence consistent with all the facts and circumstances of the case.

Having now defined the term "forthwith," we return to the initial question: Does K.S.A. 60-2404 require a judgment creditor to simultaneously file a motion for revivor with a request for the immediate issuance of an execution? To recall, the district court ruled: "Filing the execution with the motion for revivor is how the execution can be issued 'forthwith.'" We disagree. From our review of K.S.A. 60-2404's plain language; the legislative intent; the definition of "forthwith" as applied in the statute; and mindful that statutes should not require pointless or futile actions, e.g., filing a request for execution before the court has ruled on the motion to revive judgment; we find the statute does not simultaneously require filings for the execution to issue "forthwith."

To conclude, under the plain language of K.S.A. 60-2404, once the district court grants the motion for revivor, the holder of the judgment then requests the immediate issuance of an execution. No simultaneous filings are required. Additionally, as applied in K.S.A. 60-2404, the term "forthwith" means without unnecessary delay and requires reasonable exertion and due diligence on the part of the judgment creditor that is consistent with all the facts and circumstances of the case. This interpretation coincides

20

with the statute's purpose of providing the judgment creditor the ability to revive a dormant judgment within a two-year period.

B.      *Did the district court err in ruling that the Bank's actions prevented the execution from issuing forthwith as provided under K.S.A. 60-2404?*

*Standard of review*

Whether the Bank's actions prevented the execution from issuing forthwith is a mixed question of fact and law. While appellate review is unlimited in interpreting a statute, whether the Bank's actions would have caused the execution to issue forthwith as provided under K.S.A. 60-2404 is a judicial determination that must be supported by the requisite factual findings. See *Foster*, 281 Kan. at 371, 377. We review factual issues under a substantial competent evidence standard. *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 414, 233 P.3d 286 (2010). "Substantial competent evidence is 'such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.'" *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010). "In determining whether substantial competent evidence supports the district court's findings, appellate courts disregard any conflicting evidence or other inferences that might be drawn from the evidence." *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

*Analysis*

We turn now to the district court's ruling that the Bank's actions prevented the execution from issuing forthwith and granted the Gaskins' motion for relief from final judgment.

From the outset, we have determined that when used in K.S.A. 60-2404, the term "forthwith" means without unnecessary delay and requires reasonable exertion and due diligence consistent with all the facts and circumstances of the case. In *Haworth,* the panel reviewed the steps necessary for KDR to "'forthwith set'" the hearing, which included "the process of determining a date that a hearing officer and appropriate facilities will be available." 2003 WL 21981949, at *3. We thus should consider the Bank's many required steps in preparing a request for an aid of execution once the district court issued the order to revive.

To recall, after the district court issued the order of revivor on March 28, 2022, the Bank filed a request for aid of execution on June 2, 2022; the aid of execution hearing was set for August 15, 2022. The Gaskins failed to appear at the hearing and later filed the motion for relief, arguing the Bank had failed to comply with K.S.A. 60-2404. The district court's ruling on the Gaskins' motion considered whether the Bank's actions caused the execution not to issue forthwith. In its decision, the district court calculated the timeliness of the Bank's actions by beginning with the date of February 10, 2022, when the Bank filed its motion for revivor.

> "So, the time started not when the court revived the judgment on March 28, 2022. Rather, it started on February 10, 2022, when Plaintiff filed its motion for revivor. Whatever the definition of immediate, four months later is not immediate. For that matter, neither is a little over two months (late March to early June). In addition, the execution was not issued 'forthwith.'"

K.S.A. 60-2404, however, indicates that the Bank should not be held accountable from February 10, 2022, to March 27, 2022—the day before the order of revivor issued. The statute states in part: "If the motion for revivor was filed within two years after the date on which the judgment became dormant . . . , on the hearing thereof the court *shall enter an order of revivor* unless good cause to the contrary be shown, *and thereupon the execution shall issue forthwith.*" (Emphases added.) K.S.A. 60-2404. This wording

22

directs the district court to begin its calculation on the day the court had issued its order of revivor—March 28, 2022.

Once the district court granted the revival motion, the Bank sought an aid of execution proceeding under K.S.A. 60-2419 instead of requesting the clerk to issue an execution for the judge's signature. The RV had already been sold at public auction prior to the Bank executing the judgment. The original judgment awarded the Bank was over $37,954.51 for attorney fees, costs, and specified property—the RV. See K.S.A. 2023 Supp. 60-2401(a). The 2015 judgment granted the Bank the right to possess and sell the RV, thus awarding the Bank judgment for the deficiency balance. After the judgment was ordered, the Bank learned that the RV had been sold at public auction sometime after the Bank filed the replevin action. Without the ability to possess and sell the RV as ordered in the original judgment, the judgment could not be satisfied. See K.S.A. 60-2419. Hence, once the district court issued the order of revivor on March 28, 2022, the Bank would require an aid of execution hearing.

The judgment creditor is required to take several steps from the time the order granting the revivor issues through the aid of execution hearing. At the motion for relief hearing, the Bank explained why an application for an aid of execution hearing could not be filed immediately. The Bank stressed that a request for an aid of execution hearing required coordinating with both the parties' availability and the district court's own calendar: "[I]t's not something that the plaintiff can just do completely on their own, because that does have to be scheduled with the Court for a hearing date." The Bank would have to consider the opposing party's calendar and availability along with the court's calendar in preparing the request for an aid of execution hearing. See K.S.A. 60-2419. Further, setting the aid of execution hearing for August 15, 2022, also ensured there was sufficient time to properly serve the Gaskins with notice and an order to appear. See K.S.A. 60-2419 (failure to appear could result in court finding person guilty of

23

contempt of court). Consequently, the Bank filed a request for aid of execution on June 2, 2022, 66 days from the court's March 28, 2022 order granting the revivor motion.

Here, there were a variety of steps required before the Bank could file its June 2, 2022 request for an aid of execution hearing, including setting the August 15, 2022 aid of execution hearing date. The Bank's actions were "necessary and did not result from a lack of due diligence or reasonable exertion on its part." See *Foster*, 281 Kan. at 377. The court's ruling does not appear to address the time required for the judgment creditor to file the request for an aid of execution hearing and properly serve the judgment debtor as the statute requires. See K.S.A. 60-2419 ("An order for a hearing in aid of execution shall require the judgment debtor to appear[.]"). Moreover, dismissing the order to revive due to the Bank's request for an aid of execution—which invariably requires a proceeding before the execution can issue—defeats the purpose of the statute. See *Foster*, 281 Kan. at 379-80. Consequently, we find the Bank's actions following the March 28, 2022 order to revive were in adherence to K.S.A. 60-2404. Accordingly, the district court erred in ruling against the Bank and granting the Gaskins' motion for relief.

C.    *The Bank acted within its statutory time frame to revive the dormant judgment.*

Statutory interpretation presents a question of law over which appellate courts have unlimited review. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022).

Under K.S.A. 2023 Supp. 60-2403(c):  "The time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited." The Bank argues that the Kansas Supreme Court Administrative Orders 2020-PR-016 and 2021-PR-20, which tolled limitation periods and statutory deadlines from a period beginning in March 2020 and ending in April 2021, includes motions to revive a dormant judgment under K.S.A. 60-2404. Under this tolling time frame, the judgment was not

24

void until on or about July 20, 2023—as opposed to June 23, 2022, which was seven years after judgment.

In *Arch Roofing & Restoration Co*., another panel of this court determined that motions to revive a dormant judgment under K.S.A. 60-2404 are included in the Administrative Order 2020-PR-058: "[W]e find that nothing in the plain and unambiguous language of the order makes an exception for the filing of motions to revive civil judgments under K.S.A. 60-2404." 2022 WL 817280, at *2; see Kansas Supreme Court Administrative Order 2021-PR-020, effective March 30, 2021; Kansas Supreme Court Administrative Order 2020-PR-058, effective May 27, 2020; Kansas Supreme Court Administrative Order 2020-PR-016, effective March 19, 2020.

The Gaskins dispute the relevancy of the tolling period to the current claim, stating that the tolling issue is not material to the outcome of this case. Neither party, nor the district court, disputes that the Bank acted within its statutory time frame to revive the dormant judgment. In this case, the Bank filed its motion to revive on February 10, 2022—less than seven years from the July 20, 2023 tolled judgment date—and the district court issued an order reviving dormant judgment on March 28, 2022. Following the order to revive, the Bank filed a request for an aid of execution hearing on June 2, 2022, with an August 15, 2022 hearing date. We find that the Bank's motion to revive was filed within the dormancy period.

CONCLUSION

We hold that the plain language of K.S.A. 60-2404 does not require a party to simultaneously file a motion for revivor and the request for the immediate issuance of an execution. As used in K.S.A. 60-2404, the term "forthwith" is defined as without unnecessary delay and requires reasonable exertion and due diligence consistent with all the facts and circumstances of the case. We also find that following the district court's

25

order to revive, the Bank's actions were in furtherance with the execution issuing forthwith. We therefore reverse the district court's ruling on the Gaskins' motion for relief from final judgment under K.S.A. 60-260(b)(4), reinstate the Bank's creditor judgment against the Gaskins, and remand the case to the district court for further proceedings.

Reversed and remanded with directions.